## Wilsie WOOTEN v. MOHAWK RUBBER COMPANY and TRAVELERS INSURANCE COMPANY

76-23                                                536 S.W. 2d 734

### Opinion delivered June 1, 1976

*Youngdahl, Larrison & Agee,* for appellant.

*Wright, Lindsey & Jennings,* for appellees.

J. FRED JONES, Justice. This is a workmen's compensation case involving a second injury in the same employment under § 13 (f) (1) of the Compensation Act, Ark. Stat. Ann. § 81-1313 (f) (1) (Supp. 1975).

The appellant employee, Wilsie Wooten, sustained a compensable injury to his back on June 22, 1967, while employed by the appellee Mohawk Rubber Company. That injury, according to medical reports in the record, resulted in a large extruded L-4 disc which was compressing the right L-5 nerve root and it was surgically removed during the first

week in August, 1969. When Mr. Wooten was released to return to work following his surgery, he was paid compensation for a 20% permanent partial disability to the body as a whole on the basis of an estimate by his attending physician and he was retained in the employ of Mohawk.

On February 18, 1971, Mr. Wooten sustained another back injury resulting in additional surgery for the removal of a protruding disc at the same L-4 interspace but this time on the left side. Following the second disc surgery Mr. Wooten filed claim for total and permanent disability as a result of his second injury. The Administrative Law Judge and the full Commission awarded permanent and total disability under findings, conclusions, pertinent statutory provisions and award recited as follows:

## FINDINGS OF FACT
1. That the claimant suffered a compensable injury on or about June 22, 1967, and that all benefits due the claimant were paid as a result of that injury. The claimant was further rated as having a permanent partial disability of 20 percent as a result of this injury.

2. That the claimant suffered a second compensable injury on or about February 18, 1971, was earning sufficient wages to entitle him to compensation at the rate of $49.00 per week, and is now totally disabled as a result of this injury.

3. That the respondents' liability for the claimant's disability benefits for both injuries is limited to $19,500.00 as provided by Section 13 (f) (1) of the Workmen's Compensation Act. * * *

## CONCLUSIONS
The claimant suffered his first compensable injury on June 22, 1976, and received a permanent partial disability rating of 20 percent to the body as a whole as a result of that injury. The claimant was subsequently injured on February 18, 1971, while working for the same respondent, and he is now totally disabled.

Section 13 (f) (1) of the Workmen's Compensation Act

(f) Second Injury. In cases of permanent disability arising from a subsequent accident, where a permanent disability existed prior thereto:

(1) If an employee receives a permanent injury after having previously sustained another permanent injury in the employ of the same employer, for which he is receiving compensation, compensation for the subsequent injury shall be paid for the healing period and permanent disability by extending the period and not by increasing the weekly amount. When the previous and subsequent injuries received result in permanent total disability, compensation shall be payable for permanent total disability, but the sum total of compensation payable for previous and subsequent injuries shall not exceed 450 weeks or Nineteen Thousand Five Hundred Dollars ($19,500.00).

After considering all of the evidence, we find that the claimant sustained a permanent injury on June 22, 1967, and a subsequent permanent injury on February 18, 1971, while working for the same employer, which caused him to be totally disabled.

Therefore, as per Section 13 (f) (1) of the Workmen's Compensation Act and the case of *Mohawk Rubber Company* vs. *Corbitt,* [sic] 256 Ark. 932 (1974) the liability of the respondent is limited to the sum total of compensation payable for both injuries, not to exceed $19,500.00.

\* \* \*

### AWARD
The respondents shall pay to the claimant compensation at the rate of $49.00 per week for a total disability, beginning February 19, 1971, and are to continue said benefits until the combined total of compensation payable for both injuries does not exceed $19,500.00. \* \* \*

The award was affirmed by the circuit court and on

appeal to this court Mr. Wooten contends that "The award of the workmen's compensation Commission is contrary to the law." The appellant argues that under the provisions of the Act, *supra,* the permanent and total disability must be the combined effects of the two injuries. The appellant then quotes from the Act with supplied emphasis and states his contention in relation thereto as follows:

> *When the previous and subsequent injuries received result in permanent total disability,* compensation shall be payable for permanent total disability, but the sum total of compensation payable for previous and subsequent injuries shall not exceed 450 weeks or Nineteen Thousand Five Hundred Dollars ($19,500.00).

> The issue before this Court is the construction of the second sentence of the quoted portion of the Workmen's Compensation Act, and in particular, the italicized language of that section.

The appellant is right in his interpretation of the Act but we are unable to say the Commission misinterpreted the Act or failed to properly apply it to the facts in this case. Certainly the Commission could have been more specific in its findings that the total disability resulted from a combination of the two injuries, but the medical evidence is so clear we feel it would be idle gesture to remand for a more specific finding.

Dr. Morris W. Ray attended Mr. Wooten following both injuries. A number of Dr. Ray's medical reports appear in the record and we paraphrase in brief form the pertinent language of his reports following the first injury and surgery in chronological order by dates as follows: September 4, 1969: absence of back pain but continued numbness in the right lower extremity, weakness in the foot on the right side and occasionally dull aching pain in the right hip. October 2, 1969: absence of pain but occasional cramping in the right calf; -2 range of motion in the back compatible with a postoperative status. Right extensor muscle slightly improved. November 10, 1969: still having occasional cramping pain in the right lower extremity which seemed to shoot out of the end of his toes. Pain intermittent and occurs with severe bending and occasionally with heavy sneezing. No low back pain

but unable to do his exercises because of discomfort. Still -1 weakness of the right extensor muscle but released as "clear to return to work," to return in about three months because of continued residual weakness. December 8, 1969: been back at work for five days, occasional intermittent sharp pain in the low back and pain in the long toe and in the fourth toe at times. Has been somewhat nervous, upset because he had been asked to work more than 40 hours per week; said he believes he could work a full 40 hour week but more than that seemed to tire him excessively; has been somewhat depressed of late. "I do not feel he should be working over forty hours at this time." February 16, 1970: having some low back pain primarily in low back after work; complained that toes and legs felt weak. Having headaches of late. "He is depressed, unhappy at his job. He states that there is considerable pressure in his job and he is doing different things. He is quite depressed about this." Right extensor still weak but improving. Slight tenderness over T6 vertebral spinous process but not marked. X-rays within normal limits for postoperative film. "As mentioned, the patient is quite depressed about his work and has talked about quitting work. I have encouraged him to continue to try as I do not feel he will improve symptomatically or emotionally by quitting work. He is given a prescription for Butazolidin alka #40 and fitted with a Taylor three-quarter back brace." March 16, 1970: back considerably better; been working 40 hours a week and work going better; as long as not behind in his work does all right; occasional cramping pain in the right lateral calf; wearing back brace. Not necessary to see again unless additional difficulty. Will "have approximately 20% disability." September 29, 1970: complaining of headache, neck pain and interscapular pain, which has persisted ever since accident in 1967; been out of work on strike for about three and one-half months but been back at work about three days. Head, neck and upper back pains extending into the arms and down the back, seem to be increased by working. Back sore but no back pain. "I feel that some of his pain is on a chronic myofascial strain basis, and in addition, there is an element of depressive reaction here. * * * He is to call or write in 6 weeks to let me know how he is doing. *Disability 20%.*"

On February 19, 1971, the day following Mr. Wooten's second injury, Dr. Ray reported that Mr. Wooten returned stating that he had been doing fairly well and had missed no time from work because of his back trouble until about three months ago. Had been transferred to a heavier job and when throwing a tire onto a conveyor belt, experienced rather severe low back pain but kept working until the previous day, February 18, when he threw another tire onto the belt and felt severe right lower extremity pain. Upon examination Dr. Ray found muscle spasm, slight limitation, etc. He placed Mr. Wooten on conservative treatment and when he failed to respond, he was hospitalized on November 17, 1971, and Dr. Ray reported as follows: "the patient was taken to surgery on the second hospital day, and at that time a partial hemilaminectomy at L-4 and L-5 left was performed, with removal of a protruding HNP [herniated nucleus pulposus] at the L-4 left interspace." The subsequent medical reports in the record pertain to Mr. Wooten's postoperative course following the second operation. His nervous condition worsened and that was the primary basis for his permanent total disability.

We have had occasion to consider section 13 (f) of the Compensation Act in at least three cases. *Davis-Stearns-Rogers Const. Co.*, 248 Ark. 344, 451 S.W. 2d 469 (1970), involved a second injury in different employment under 13 (f) (2), rather than in the same employment under 13 (f) (1) as in the case at bar, but our reasoning is applicable here. Davis had sustained a series of accidents each resulting in small percentages of permanent disability but totaling in the aggregate 75% to the body as a whole. Following subsequent injury he became permanently and totally disabled and the Commission, relying on *O. K. Processors, Inc.* v. *Dye,* 241 Ark. 1002, 411 S.W. 2d 290 (1967), awarded compensation for permanent total disability without credit or regard to the permanent disability occasioned by the previous injuries. The circuit court held that the evidence before the Commission was insufficient to sustain the Commission's award and the circuit court fixed compensation based on 15% disability to the body as a whole. We reversed the circuit court judgment and remanded with directions to remand to the Commission for a determination of a proper award in accordance with our opinion, which was in pertinent part as follows:

The statute here involved, Ark. Stat. Ann. § 81-1313 (f) (2) (ii), provides:

If the subsequent injury is one that is not scheduled under section 13 (c), the injured employee shall be paid compensation for the healing period and for the degree of disability that would have resulted from the subsequent injury if the previous disability had not existed.

It appears that the Commission had here taken the view that, if the employee is capable of gainful employment, the subsequent employer must take the employee as the employer finds him and that for purposes of compensation, the Commission may disregard previous disabilities. That is neither our understanding of the statute above, nor of our holding in *O.K. Processors, Inc.* v. *Dye*, 241 Ark. 1002, 411 S.W. 2d 290 (1967).

Our understanding of Ark. Stat. Ann. § 81-1313 (f) (2) (ii), is that if Davis' prior disabilities are a contributing factor to his present total permanent disability, then Stearns-Rogers Construction Co., as a subsequent employer, is not liable for 100% of the total permanent disability but only for that degree which would have resulted had the prior disability not existed.

The reason for the apportionment of liability for compensation for permanent disability between prior and subsequent injuries is stated in Larson Workmen's Comp. Vol. 2, § 59-31 as follows: * * *

Neither do we interpret our opinion in *O. K. Processors, Inc.* v. *Dye, supra*, as holding to the contrary. In that case we held that the degree of disability resulting from the subsequent injury was a question of fact for the Commission. In so holding we partially quoted from Larson Workmen's Comp., Vol. 2, § 59-42. * * *

In *Intl. Paper Co.* v. *Remley*, 256 Ark. 7, 505 S.W. 2d 219 (1974), the injured workman sustained an injury to his hand in 1934 before Arkansas even had a workmen's compensation act and 34 years before obtaining the different employment in which he sustained another injury to his hand in 1971. The

first injury resulted in a 20% permanent partial disability to his hand and his 1971 injury resulted in an additional 15% permanent partial disability to the hand. The Commission awarded compensation for the entire 35% and on appeal it was insisted that the respondent-appellant was responsible only for the 15% disability suffered in the respondent's employ and, after quoting the statute, § 81-1313 (f) (2) (Supp. 1973), we said:

> [T]he appellee's recovery for the functional loss caused by the second injury cannot, under the statutory language, include the functional loss caused by the first injury.

As already noted, the two above cases as well as the *O. K. Processors* case cited in *Davis* were subsequent injuries resulting in permanent disability while in the employ of different employers and fell under § 81-1313 (f) (2) rather than in the employment of the same employer under (f) (1) as is the case at bar, and as was the situation in *Corbitt* v. *Mohawk Rubber Co.,* 256 Ark. 932, 511 S.W. 2d 184 (1974). In *Corbitt* v. *Mohawk,* Corbitt became permanently and totally disabled from the *combined* effects of two successive and compensable work related back injuries while employed by Mohawk, but in that case the Commission specifically so found. The Commission in applying the provisions of § 81-1313 (f) (1) in *Corbitt,* awarded permanent total disability benefits but limited recovery to $19,500 as the maximum benefits payable under the Act. The circuit court affirmed and the primary contention on appeal to this court was that § 81-1313 (f) (1) was unconstitutional in that it attempted to limit recovery for permanent total disability; whereas, § 81-1310 (c), having to do with total permanent disability as a result of a single accident, is not so limited as to payment. We held the statute constitutional and in affirming the judgment we remarked on the philosophy behind such statutes as being to encourage industry in employing and retaining in employment physically handicapped persons. Of course, as already pointed out, the *Corbitt* case differs from the case at bar in one primary respect. As stated in *Corbitt,* the Commission found "the appellant was permanently and totally disabled from the *combined effects* of two successive and compensable work related back injuries [italics supplied]." In the case at bar the

Commission simply found "The claimant was further rated as having a permanent partial disability of 20 percent as a result of this [first] injury."

We are of the opinion that the only logical interpretation to be placed on § 81-1313 (f) (1) is that the permanent total disability must result from the combined effects of first and second injuries. The statute by its plain language only applies when there is some degree of permanent disability resulting from the first injury. The entire subsection (f) as to second injury only applies "where a permanent disability existed prior thereto." An injury which does not result in some degree of permanent disability simply is not within the purview of § 81-1313 (f).

As we interpret the language in the Commission's decision, it did find that Mr. Wooten's permanent total disability was the combination of the disabilities he suffered as a result of both accidental injuries as was the case in *Corbitt v. Mohawk, supra,* cited and relied on by the Commission. There is substantial evidence to sustain the Commission's findings and award and the judgment must be affirmed.

Affirmed.

FOGLEMAN, J., would remand to the circuit court with directions to remand to the Workmen's Compensation Commission for a clarification of its findings of fact.