McDANIEL *v*. HILYARD DRILLING Co.

5-2294                                              343 S. W. 2d 416

Opinion delivered February 13, 1961.

[Rehearing denied March 20, 1961]

*McMath, Leatherman, Woods & Youngdahl,* for appellant.

*Shackleford & Shackleford,* for appellees.

JIM JOHNSON, Associate Justice. This is a workmen's compensation case. It is undisputed that appellant-claimant Cleo Tommy McDaniel injured his back when he fell from a water truck while working for appellee-respondent Hilyard Drilling Company on February 7, 1958.

The only controversy between the parties is the amount of permanent partial disability due appellant. Appellees contend that appellant is only entitled to 10% permanent partial disability and not 20% as sought by appellant. By agreement of counsel this case was submitted on the medical reports furnished by five physicians who had examined appellant.

The first doctor to see appellant was Dr. William J. Hutchison of Tallahassee, Florida. Dr. Hutchison's narrative report of April 16, 1958, stated that McDaniel, according to his history, had never had a previous back injury. He further stated that at the time of the report the claimant McDaniel had a mechanically unstable back and, ''I believe he will continue to have back pain if he tries to do heavy work.'' Dr. Hutchison went on to say:

''He has a 20% permanent partial disability of his back for heavy work. Approximately 10% of this is due to the pre-existing deformity of his back and 10% due to the aggravation of the injury by the accident in question.''

The claimant was next examined by Dr. Charles G. Smith, Texarkana, Texas, on October 4, 1958, and Dr. Smith rendered a report on October 21, 1958. After setting forth the details of the accident of February 7, 1958, Dr. Smith's report states, ''He has no previous history of back complaints.'' Dr. Smith went on to further state:

''It is difficult to assess exactly what value should be placed on his injury as the cause of his back symptoms in view of the possible contributing factors of his leg length discrepancy and congenital anomaly. I would estimate his overall permanent partial disability at the present time as representing 10% of total disability.''

In his report of February 9, 1959, Dr. Smith stated in a letter to the insurance carrier:

''The question you pose is indeed a difficult one. Obviously, the congenital anomaly of the back and the leg length discrepancy pre-existed his present complaints. According to his statement these variations from normal caused him no symptoms and he was not conscious of either existing; however, I feel that they did contribute in that they pre-disposed him to his present complaints.

''Asked to place an exact figure on the value of the various components, I would say that this pre-existing leg length discrepancy and congenital anomaly of the back

account for two or three per cent of his present disability. I think that you can understand that this is a hard position to defend since, according to the patient's history he had no previous complaints."

Dr. J. C. Caden of Jackson, Mississippi, examined claimant on March 3, 1959, and stated that he had a permanent partial disability of 20% to the body as a whole. Dr. Caden stated: "This is based on aggravation of a pre-existing condition since this no doubt was of congenital origin."

Dr. Jack H. Phillips of Natchez, Mississippi, examined the claimant on April 1, 1959, and rendered a report dated April 4, 1959. Dr. Phillips in his report stated:

"This patient appears to be honest and sincere to me and apparently has been able to hold his job only because his employer is a considerate one. I feel that because of the congenital abnormality of the low back that he has had persistent symptoms and the fall would not have probably bothered him so much if he had not had this pre-existing condition. Since most of his complaint is centered about the sacrococcygeal joint it is logical to assume that he had a sprain of this joint with persistent symptoms although the x-ray does not show very much in this area. I believe that the patient's condition is static in that he will not be benefited appreciably by further treatment and it is my impression that he had a twenty to twenty-five per cent permanent partial disability to the low back as a result of his fall."

In a supplemental report rendered on April 7, 1959, Dr. Phillips stated as follows:

"This is a supplementary report to our April 4, 1959, report to clarify the amount of disability this patient has separating the pre-existing low back difficulty as residual of his congenital abnormality from disability incurred as a result of his injury.

"I believe that this patient has a ten per cent permanent disability as a result of his injury and his remaining fifteen per cent evaluation would be on the

basis of pre-existing changes which were not caused by his injury as stated in my first report. I feel that this patient would have had little permanent disability to his low back had he not had the existing difficulty.''

At the request of the Workmen's Compensation Referee, Dr. John M. Hundley saw the claimant on January 29, 1960. Dr. Hundley's report on that date states: ''The patient denies previous trouble with his back.'' Dr. Hundley goes on to say in the portion of his report labeled ''opinion'':

''From the foregoing history, physical and x-ray examination, it is my opinion that this patient had a congenital anomaly of his lumbar and lumbosacral region and this defect with which he was born led him more prone to trivial gross injuries to his lower back than an individual without such an anomaly. It is quite conceivable that he did not have any symptomatology prior to the accident of February, 1958, and in all probability an individual without any pre-existing congenital anomaly such as this man has would not have had much more than soreness and muscle tightness as the result of the injury he described ... It is assumed that there was a potential 10 per cent disability of his lower back prior to the accident of February, 1958, and that this injury could not have conceivably caused more than an additional 10 per cent permanent partial disability of the body as a whole.

'' ... To give him every benefit of doubt I believe that there probably does remain 10 per cent permanent partial disability as the result of the pre-existing congenital anomaly of the lumbosacral spine and an additional 10 per cent as result of aggravation of this pre-existing condition.''

On the basis of the above mentioned medical reports, the Commission found that the claimant had a 20% disability to the body as a whole but the Commission allocated 10% of this disability to the latent congenital anomaly of the man's back, which predisposed him ﹍

the injury occurring on February 7, 1958. Compensation was thus only allowed for 10% permanent partial disability or 45 weeks. The claimant appealed to circuit court contending that the permanent partial disability should not have been reduced because of the congenital anomaly. The circuit court affirmed the Commission and the claimant now brings his appeal to this Court.

For reversal, appellant contends that: "Where a latent congenital defect is triggered by an accident, the entire resulting permanent disability is compensable."

Appellees' contention is that: "factually appellant's pre-existing condition was not latent, but obviously and necessarily produced some degree of disability before the accident and continued to operate as a source of disability after the accident. They further contended before the Commission, and do so now, that any award of compensation must be limited solely to the disability produced by the injury and the prior congenital defect was not compensable."

On the other hand, appellant argues that: "If the insurance carrier's physicians, who make 90 per cent of the disability evaluations on claimants, are given the legal license to assign a portion of permanent disability to latent pre-existing conditions, the Workmen's Compensation Act has been wrecked in this State as far as claimants are concerned."

Both appellant and appellees, in order to sustain their conflicting contentions, rely principally upon the following sub-sections of Sec. 59, Vol. 2, Larson's Workmen's Compensation Law, pages 54 and 58:

"The principal legal question attending apportionment has been that of distinguishing prior 'disabilities' from prior 'non-disabling' defects or diseases which contribute to the end result. Nothing is better established in compensation law than the rule that when industrial injury precipitates disability from a latent prior condition, such as heart disease, cancer, back weakness and the like, the entire disability is compensable, and except in

three states having special statutes on aggravation of disease, no attempt is made to weigh the relative contribution of the accident and the pre-existing condition to the final disability. Apportionment does not apply in such cases, nor in any case in which the prior condition was not a disability in the compensation sense . . . ''

''To be apportionable then, an impairment must have been independently producing some degree of disability before the accident, and must be continuing to operate as a source of disability after the accident.''

We agree with the logic of the general rule relative to apportionment as set forth above from Larson, and inasmuch as this is a case of first impression in Arkansas, we adopt it as our own.

Arkansas is not one of the states referred to by Dean Larson as ''having special statutes on aggravation of disease.''

The word ''latent'' is defined in Black's Law Dictionary as follows:

''Hidden; concealed; dormant; that does not appear upon the face of a thing . . .''

Therefore, after carefully examining the limited record before us, we find that there is no substantial evidence to support a conclusion that the abnormality appellant may have had prior to the injury here complained of was not latent.

Accordingly, the judgment is reversed and the cause is remanded to the Circuit Court with directions to remand to the Workmen's Compensation Commission for entry of an award for twenty percent disability.