## C. FINKBEINER, INC., ET AL v. ISIAH FLOWERS JR.

5-5630        471 S.W. 2d 772

Opinion delivered October 25, 1971

*Cockrill, Laser, McGehee, Sharp & Boswell,* for appellants.

*Gannaway, Darrow & Hanshaw,* for appellee.

J. FRED JONES, Justice. This is a workmen's compensation case in which the claimant-appellee, Isiah Flowers, Jr., sustained a compensable injury to his back while in the employment of the appellant, C. Finkbeiner, Inc. Flowers was awarded compensation based on a 25% permanent partial disability to the body as a whole by the Commission. The award was affirmed on appeal to the Pulaski County Circuit Court and Finkbeiner relies on the following points for reversal:

"There was no substantial evidence to justify an award of 25% permanent partial disability.

That even under the doctrine of *Glass* v. *Edens,* there

was no substantial evidence supporting an award of 25% permanent partial disability."

The record is not clear as to the mechanics of the injury sustained by Flowers, but it is clear that he did receive an injury to his back on April 17, 1969, and it was stipulated that the injury was compensable. Flowers' claim before the referee, as stated by his attorney, was for a 20% permanent partial disability rating on the basis of aggravation of a congenital condition and for an additional 15% permanent partial disability based on a loss in earning capacity, making a total of 35% permanent partial disability claimed by Flowers as a result of his injury. The question before us on this appeal is whether there is any substantial evidence to support the Commission's finding that Flowers suffered a 25% permanent partial disability as a result of the injury.

Flowers testified before the referee that he was 25 years of age and had worked for Finkbeiner, doing heavy lifting and maintenance work without difficulty, for approximately three years. He testified that prior to his injury on April 17, 1969, he had never injured his back and had never suffered any disability or trouble with his back. He testified that following his injury and his release by the doctors to return to work, he reported back to work for Finkbeiner and after working approximately three hours he was discharged. He testified that he then applied to another packing company and was interviewed for employment, but after revealing the facts of his prior injury he was not employed. He testified that he applied to the unemployment office and was advised that there were several openings available for the type work he had been accustomed to doing, but that he would not be able to do that type of work and would have to find something light. He testified that about one-half month prior to the date of hearing he did obtain employment from the Cedar Hill Corporation cleaning up apartments, "floors and stuff like that," and that he was so employed at the time of the hearing. He testified that he is earning $1.75 per hour in his present employment and was earning $1.95 per hour at the time of his injury. He testified that he still wears a back brace and

is still taking exercises prescribed by the doctors who treated him following his injury.

Dr. Joe K. Lester, an orthopedic surgeon in Little Rock, examined Mr. Flowers upon referral by Dr. Jim R. Warden and under date of May 29, 1969, he reported his findings that Flowers had a gibbus of the lower dorsal area of the spine with increased kyphosis in this region. He reported that X-rays of the cervical spine revealed straightening of the cervical lordotic curve, and that a neutral lateral view reveals straightening and a tendency toward reversal of the cervical lordotic curve in the midportion. In the lumbar spine Dr. Lester found a markedly accentuated lumbosacral angle but with the disc spaces well maintained. On the film of the thoracic (dorsal) spine he found nothing wrong with the architecture throughout with the exception of the areas in the gibbus deformity which he considered to be at T-11. He attributed this deformity to a congenital abnormality with incomplete formation of the vertebral body possibly caused by infection in early life but most likely congenital. In this report Dr. Lester then states:

"Dr. Warden, this patient had a extremely precarious back situation in the lower dorsal area and has, of course, had this since his early formative years. This has become symptomatic following the industrial accident in which he was involved. The findings in the cervical area may well be associated with the fall which he describes, although in the opinion of this examiner, they should be relatively short in duration.

\* \* \*

This patient should not return to work in a situattion which requires prolonged standing, excessive bending or any lifting whatsoever."

On June 22, 1969, Dr. Lester reported that Flowers was utilizing his back brace with good range of motion but accompanied by pain in the area of the deformity. Dr. Lester concluded this report as follows:

"At this time, he was advised that he could discontinue physical therapy as it is felt that maximum improvement has been obtained from such. He, by all means, should continue the use of the brace and the exercise program. He was advised that he must get a job that did not require heavy lifting and is much more sedentary in nature. Accordingly, at this time, he was referred to the Arkansas Rehabilitation Service.

This patient has *at least* 20% permanent partial disability of the body as a whole *on the nature of a congenital abnormality. This congenital abnormality became symptomatic because of an industrial injury which he sustained.* In the opinion of this examiner on this basis at least half of this disability is attributable to the industrial injury.

From this standpoint of the Company and the Insurance Carrier, it is tragic that this man was ever permitted to assume gainful employment of the type in which he was employed. If, at all possible in the future, such cases should be ruled out by pre-employment physical examination." (Emphasis added).

Dr. Charles N. McKenzie, another orthopedic surgeon of Little Rock, examined Flowers in consultation upon referral by the compensation insurance carrier on July 25, 1969. Dr. McKenzie found Flowers to be normal in movement and range of motion in the cervical dorsal and lumbar areas of the spine, but on X-rays found the anomalous development of T-11 with anterior half of the vertebra being underdeveloped and with some mild gibbus present. He diagnosed Flowers' condition as anomalous development of the lower dorsal spine with secondary gibbus development. Dr. McKenzie was of the opinion that Flowers was able to resume his work, and that he suffered no permanent partial disability as a result of his injury.

The full Commission adopted the referee's opinion in this case with the exception of the award of attorney's fee, which is not in issue. Arriving at an overall 25%

permanent partial disability in this case, the referee points out a significant observation which we feel states a proper basis for substantial evidence supporting the overall award of 25% permanent partial disability. The referee's statement is as follows:

"The referee, noting that claimant must wear a back brace at all times during the day and was told to refrain from work requiring prolonged standing, bending or lifting, feels the residual disability, to be 25% to the body as a whole."

As above pointed out, Dr. Lester found that Flowers had *at least* a 20% permanent partial disability to the body as a whole, but Dr. Lester attributed only half of this to the results of the injury and the other half to the congenital deformity in the appellee's spine. Dr. Lester does not attempt to distinguish between the two except by reference that the congenital deformity makes the appellee's spine highly susceptible to injury resulting in disability. There is no evidence that Flowers ever experienced any disability in doing any of the work he did for Finkbeiner or for anyone else prior to his injury upon which this claim is based. On the contrary, he testified that he had never experienced any trouble with his back prior to the injury and his testimony was not refuted.

We agree with the appellee that in *McDaniel* v. *Hilyard Drilling Co.*, 233 Ark. 142, 343 S. W. 2d 416, we followed the rule stated by Larson in vol. 2, § 59 of his work on Compensation Law that:

". . . when industrial injury precipitates disability from a latent prior condition, such as . . . back weakness and the like, the entire disability is compensable. . ."

See also *Hamilton* v. *Kelly-Nelson Const. Co.*, 228 Ark. 612, 309 S. W. 2d 323, and *Sturgis Bros.* v. *Mays*, 208 Ark. 1017, 188 S. W. 2d 629.

We are of the opinion, therefore, that Dr. Lester's

findings and conclusions are substantial evidence that Flowers now has *at least* a 20% permanent partial disability to his body as a whole brought about as a result of his injury. We are also of the opinion that since Flowers is now required to wear a back brace and is limited to employment on jobs which are much more sedentary in nature than the job he was doing at the time of his injury, there is substantial evidence that his future earning capacity has been cut to some degree and is sufficient to support the additional 5% permanent partial disability awarded by the Commission.

Finding the percentage or extent of permanent disability caused by industrial injury has never become an exact science under our workmen's compensation law in Arkansas; and the mere fact that the referee and the Commission used the phrase "to the body as a whole" in finding that Flowers has 5% more disability than Dr. Lester estimated as the minimum, does not indicate to us that the Commission only considered medical evidence and simply found that Flowers' disability was 5% more than the doctor said that it was.

The injury here, and the functional disability, were all in Flowers' back. So as a *practical matter* in this case it is immaterial whether the full 25% is related to "the body as a whole" or to "total disability." They both amount to the same in number of weeks to be paid and in the amount to be paid each week.

The case of *Ray v. Shelnutt Nursing Home,* 246 Ark. 571, 439 S. W. 2d 41, cited by the appellant is distinguishable on the facts from the case at bar. Quoting from our opinion in *Shelnutt*:

". . . [T]he appellant gave her work history prior to her injury, but gave no testimony as to work history, attempts to work, or ability or inability to work since her injury and surgery."

In the case at bar it is apparently necessary for Flowers to wear his back brace at all times during the day. He returned to his former employment and was

discharged after working about three hours. He was interviewed for employment by the Brown Packing Company and turned down. He applied to the unemployment office for work but was advised there was nothing available which he was able to do. The facts in the case at bar are more in point with the facts in *Wilson & Co. v. Christman*, 244 Ark. 132, 424 S. W. 2d 863, cited in *Shelnutt*, than they are with the facts in the *Shelnutt* case.

The judgment is affirmed.