James MARSHALL *v.* OUACHITA HOSPITAL and
ST. PAUL FIRE & MARINE INSURANCE
COMPANY

CA 80-144                                        601 S.W. 2d 901
Court of Appeals of Arkansas
Opinion delivered July 9, 1980

959

*Roberts, Harrell & Lindsey*, for appellant.

*Shackleford, Shackleford & Phillips, P.A.*, for appellees.

MARIAN F. PENIX, Judge. This is an appeal from a decision of the Workers' Compensation Commission involving the application of Ark. Stat. Ann. § 81-1313(f)(2)(ii).

In September, 1952, claimant, then a 21 year old carpenter, was stricken with polio. He was out of the labor force until February, 1953 — some six months. He returned to work for the same company in February, 1953, learning to file saws by hand. At this time, the claimant was wearing braces on both legs and a back brace which connected to the leg braces. The claimant also required the use of two crutches in order to walk. When the job at which claimant was working ended, he became an insurance salesman. Later he worked as an outside salesman for Firestone and as a Mason Shoes salesman. During this time, the claimant obtained his GED and took a junior accounting course. Over this period of time, the claimant gradually discarded all of the braces except for a left knee brace and learned to walk without the crutches.

Claimant went to work for the Ouachita Hospital on October 11, 1956. He remained at this hospital until his injury on June 19, 1978 — some 22 years. During his employment at the hospital, the claimant became a lab technician. This has been his job for most of his employment with the hospital.

On June 19, 1978, as he straightened up from drawing blood from a patient, he felt an onset of back pain. Dr. S. B. Thompson diagnosed the condition as a ruptured disc. The claimant underwent a laminectomy on the left side of L 5 and exploratory surgery at L 5 and S 1 was performed. There is no dispute that the claimant is now permanently and totally disabled. Dr. Thompson in a December 12, 1978 letter report wrote:

> It would be my impression that an equitable way of handling the distribution of the disability in case he took permanent disability and retirement, would be to estimate the contribution of the injury on the job as about 20% of the value of the body as a whole with the remainder of the 80% coming from the previously existing disability that he had.

The Administrative Law Judge and the Workers' Compensation Commission found the claimant to be permanently and totally disabled. However, they ruled he was entitled to permanent partial disability benefits calculated only upon a rating of 20% permanent partial disability as he had an 80% permanent partial disability to the body as a whole prior to the June 19, 1978 injury. The claimant appeals.

The Commission found there was a previously existing 80% disability. The claimant contends this is erroneous. He contends he had *no* disability in the Workers' Compensation sense in that he had been able to work as a lab technician at the Ouachita Hospital where he had been performing all required tasks for 22 years at the time of his accident. The claimant relies on *McDaniel* v. *Hilyard Drilling Co.*, 233 Ark. 142, 343 S.W. 2d 416 (1961). "Apportionment does not apply in such cases, nor in any case in which the prior condition was not a disability in the compensation. . . ." *McDaniel*, supra at page 146. The claimant contends he certainly had some functional disability, but in his ability to hold down a full time job he had no earning capacity disability until after the back injury.

The respondents-appellees argue the Commission correctly apportioned the disability from the back injury and the disability from the polio. *Davis* v. *Stearns-Rogers Construction Co.*, 248 Ark. 344, 451 S.W. 2d 469 (1970) is relied upon by the respondents. "If prior disabilities are a contributing factor to his present total permanent disability, then Stearns-Rogers as a subsequent employer, is not liable for 100% of the total permanent disability but only for that degree which would have resulted had the prior disabilities not existed." *Davis*, supra at page 348.

Should the Workers' Compensation Commission have applied the apportionment statute? In order to determine this issue, we must first look at the definitions which are to apply to Title 81. These definitions govern the meanings of the words used in this Act.

Ark. Stat. Ann. § 81-1302(d) defines "Injury" as:

(d) "Injury means only accidental injury arising out of and in the course of employment, including occupational disease as set out in Section 14, and occupational infections arising out of and in the course of employment.

Ark. Stat. Ann. § 81-1302(e) defines "Disability" as:

(e) "Disability" means incapacity *because of injury* to earn, in the same or any other employment, the wages which the employee was receiving at the time of the injury.

In order to interpret "disability" we must insert the definition of "injury" as set forth in (d) into the definition of disability in (e). Therefore it reads as follows:

Disability means incapacity because of accidental injury *arising out of and in the course of employment*, to earn in the same or any other employment, the wages which the employee was receiving at the time of injury.

The Commission applied Ark. Stat. Ann. § 81-1313(f)(2)(ii) to this case. This section reads as follows:

(f) *Second Injury* — In cases of permanent disability arising from a subsequent accident, where a permanent disability existed prior thereto: . . .
(2) If an employee has a prior permanent disability not occasioned by an injury resulting while in the employ of the same employer in whose employ he received a subsequent permanent injury, the amount of compensation for the subsequent injury shall be fixed as follows: . . . .
(ii) If the subsequent injury is one that is not scheduled under section 13(c), the injured employee shall be paid compensation for the healing period and for the degree of disability that would have resulted from the subsequent injury if the previous disability had not existed.

We do not find this section to be applicable. The polio suffered by the Claimant was not the result of a work-related in-

jury. It did not arise out of and in the course of his employment. Therefore, claimant had not suffered any job-related injury as defined in our Workers' Compensation Act. Hence, any disability suffered as a result of the polio was not disability as defined in § 81-1302(e) and hence it is not disability subject to apportionment. Instead, any impairment which the claimant had prior to the injury suffered at Ouachita County Hospital was a pre-existing condition. It is basic in Workers' Compensation law that an employer takes his employee as he finds him. See 1 Larson, Workmen's Compensation Law, § 12.20, p. 3-307.

Seven states have statutes which would allow apportionment in this type situation. The California statute is an example.

§ 4663. Aggravation of prior disease.
In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury. CAL. CODE § 4663 (Deering).

Arkansas presently has no such statute. As of January 1, 1981, however, the Second Injury — Apportionment Statute will be different. The Legislature has passed the following amendment:

81-1313. Compensation for disability.
(i) Second Injury.
(1) Commencing January 1, 1981, all cases of permanent disability where there has been previous disability *or impairment* shall be compensated as herein provided. Compensation shall be computed on the basis of the average earnings at the time of the last injury. If any employee who has a permanent partial disability or impairment, *whether from compensable injury or otherwise*, receives a subsequent compensable injury resulting in additional permanent partial disability so that the degree or percentage of disability caused by the combined disabilities or impairments is greater than that which would have resulted from the last injury, con-

sidered alone and of itself, and if the employee is entitled to receive compensation on the basis of combined disabilities, the employer at the time of the last injury *shall be liable only for the degree or percentage of disability which would have resulted from the last injury had there been no pre-existing disability or impairment.*

This Court fails to see why this amendment would be necessary if (f) is presently interpreted in the manner urged by the appellees.

In *Wilson Hargett Construction Co.* v. *Holmes*, 235 Ark. 698, 361 S.W. 2d 634 (1962), the Supreme Court affirmed the Workers' Compensation Commission refusal to apportion the disability suffered by claimant as a result of two heart attacks. Claimant's first heart attack was suffered in 1957 while working for himself or another. His doctor allowed him to re-enter the labor market but cautioned him against heavy work or lifting. From 1958 through 1960, the claimant regularly worked forty hours a week as a pipe fitter. On June 22, 1960, he suffered a second heart attack while lifting a pipe for his employer. The employer argued the disability of claimant should be apportioned between the two heart attacks with the employer's liability being no greater than the percentage of disability which would have resulted had the claimant suffered no previous heart attack. The Supreme Court quoted from Larson, 2 Workmen's Compensation Law, § 59 as follows:

> ... 'To be apportionable, then, an impairment must have been independently producing some degree of disability before the accident, and must be continuing to operate as a source of disability after the accident.' Holmes had suffered a heart attack in 1957, but that heart attack was not producing any degree of disability at the time of the heart attack in this case in June, 1960. Holmes had returned to work and was engaged by Wilson Hargett Construction Company as a pipe fitter and was earning $160.00 a week. The attack in 1957 had resulted in no impairment of Holmes' earning capacity; ... 'It should be noted that this first attack was not claimed as an industrial injury and the claimant had

returned to full employment between the first and second heart attacks.' *Wilson Hargett Construction Co.*, supra, pages 701-702.

In deciding *Wilson Hargett Construction Co.*, supra, the Supreme Court relied upon and quoted excessively from *McDaniel* v. *Hilyard Drilling Co.*, 233 Ark. 142, 343 S.W. 2d 416 (1961). The claimant injured his back on February 7, 1958. The issue was the percentage of permanent partial disability sustained by the claimant. There were five medical reports from five physicians entered into evidence. Each found the claimant had "pre-existing deformity to the back" or "mechanically unstable back" or "a congenital anomaly." The Commission found 20% Permanent Partial Disability to the body as a whole but allocated 10% of the congenital anomaly which pre-disposed him to the injury. Therefore the Commission allowed compensation benefits on 10% permanent partial disability.

The Supreme Court reversed, again quoting from Larson as follows:

". . . Apportionment does not apply in such cases, nor in any case in which the prior condition was not a disability in the compensation sense . . ."

The Supreme Court agreed with this rule and adopted it for Arkansas.

This Court fails to see the difference between a non job related heart attack and non job related polio. Both are diseases. Both leave residuals. The degree of harm to the body depends upon the severity of the attack. Each may restrict, to some degree, the future activities of a worker. The Supreme Court in *Wilson Hargett Construction Co.*, supra, refused to apply the apportionment statute. They stated that there was no disability in the compensation sense from the first heart attack. We see no disability in the compensation sense from the polio. Unlike the claimant in *Davis* v. *Stearns-Rogers Construction Co.*, supra, this claimant had no prior disabilities in the compensation sense. None of his disability was the result of an industrial accident.

Both parties concede the claimant was permanently and totally disabled. The only issue was apportionment. Since we find as a matter of law, apportionment does not apply, this case must be reversed and remanded to the Commission with instructions to enter an award of 100% disability.

In addition, the 10% penalty is awarded on all amounts controverted. Claimant's attorney is allowed $250.00 fee for services rendered on appeal.

Reversed and remanded.