HARRISON FURNITURE and AMERICAN MUTUAL INSURANCE COMPANY *v.* Renard R. CHROBAK

CA 81-147                                      620 S.W. 2d 955

Court of Appeals of Arkansas
Opinion delivered September 16, 1981

*Marian F. Penix* of *Penix, Penix & Mixon*, for appellants.

*Ken Reeves* of *Pinson & Reeves*, for appellee.

GEORGE K. CRACRAFT, Judge. The appellants, Harrison Furniture and American Mutual Insurance Company, bring this appeal from an award of the Workers' Compensation

Commission contending that the award and finding of the Commission that the appellee, Renard R. Chrobak, was totally disabled is not supported by substantial evidence, and that the claimant is estopped to claim such disability by his conduct. We find no merit to these contentions. However, the appellants further assign as error the refusal of the Commission to apportion the disability between it, the last employer, and the Second Injury Fund, for disability resulting from a prior injury. We agree and remand the case for further proceedings.

Appellee has been afflicted since infancy with spastic left hemiparesis which manifested itself in a withered left hand, arm and leg. Both of his left extremities were smaller than his right and he walked with a limp. His left arm could not be rotated and he had little or no use of that hand. Despite this impairment he was gainfully employed by appellant until October 11, 1979, when he sustained a compensable injury in which one of his right fingers was severed and two others were so severely damaged that the right hand was rendered essentially functionless. Prior to that time he had referred to his right hand as his "bread and butter hand" and stated that before his second injury he could do as much with his one hand as most men could do with two. On evidence hereinafter discussed the Commission found that the appellee was permanently and totally disabled and that appellants were solely liable for all benefits, refusing to apportion the disability attributable to his prior impairment to the Second Injury Fund.

## I.

The appellants first contend that the Commission's finding that the appellee was permanently and totally disabled is not supported by substantial evidence. In support of this position the appellants argue that the evidence of two medical experts indicated that the anatomical disability was less than total. While conceding that *Glass* v. *Eden*, 233 Ark. 286, 346 S.W. 2d 685 (1961), authorizes consideration of wage loss factors as well as medical testimony in total disability determinations, appellants argue that there is insufficient wage loss evidence to support the finding of the Commission. We do not agree.

On appeal from Workers' Compensation Commission the review by the Court of Appeals is limited to determining whether the decision is supported by substantial evidence, and in so determining, the court is required to view the evidence in the light most favorable to the decision of the Commission. Even where the evidence would support a conclusion different from that reached by the Commission the court will affirm the Commission unless it determines that reasonable minds could not reach that conclusion. *Purdy* v. *Livingston*, 262 Ark. 575, 559 S.W. 2d 24 (1977).

When the evidence is reviewed in that light we find that there was substantial evidence to support the findings of the Commission. The medical report of Dr. Garland indicates that there is "not a single activity requiring the use of the upper extremities" that appellee would currently be capable of performing. He found both the right and left hand to be essentially functionless and that neither would improve. Neither of the other doctors who testified appears to have taken into consideration the effect of his pre-existing disability of the left hand in making his determination of lesser anatomical disability and made findings only with respect to the second injury.

There was also testimony from the appellee and his wife that he could not now tie his shoes, dress himself, pick up things or do any type of work requiring hand or power tools or the lifting of heavy objects. It was his further testimony that he could not operate office machinery and had considerable difficulty in writing. He further testified as to his unsuccessful efforts to obtain employment at some twenty-five different places in the area in which he resided. He was unable to receive help from the Arkansas Rehabilitative Service. We cannot say that reasonable minds could not reach the conclusion that he was in fact totally disabled, despite the fact that he did return and attempt to work for the employer for a short time after the second injury.

## II.

Prior to the hearing before the Workers' Compensation Commission the appellee had been seeking employment

and registered with the Employment Security Division, executing forms prepared by that agency which indicated that he was available, willing and able to work. There was evidence that he received benefits under the Employment Security Act. The appellants contend that as he drew unemployment benefits he should be estopped to now claim that he was and is permanently and totally disabled. While it does not appear that this issue was raised before the Commission and ought not be considered by us on appeal, we note that appellants have cited us no authority in support of the argument that registration for employment by an injured worker bars the right to benefits under the Workers' Compensation Act.

Both parties concede that Ark. Stat. Ann. § 81-1310 (g) (Supp. 1981), was not in effect at the time of claimant's injury and could not apply to his case. This section, which became effective January 1, 1981, would provide that no compensation for disability shall be payable to an injured employee under the Workers' Compensation Act with respect to any week or weeks for which he had been receiving benefits under the Employment Security Act or the unemployment insurance laws of any other state. Prior to this enactment the Workers' Compensation Act contained no such restriction nor have our courts so held.

### III.

The appellants finally urge that the Commission erred in refusing to apportion the disability between the employer and the Second Injury Fund under Ark. Stat. Ann. § 81-1313 (2) (Repl. 1976). They maintain that the Commission erred in holding that the appellants were solely liable and that that portion of his disability attributable to his congenital impairment should have been apportioned against the Second Injury Fund. We agree.

In making the award against the appellants the commission found that appellee was in fact totally disabled, but that apportionment under Ark. Stat. Ann. § 81-1313(f)(2)(ii) was not authorized because appellee's pre-existing disability resulted from a congenital abnormality and was not work related and did not arise out of and in the course of his

employment. We agree with appellants' position that the Commission erred in so holding.

The question of whether apportionment was dependent upon the pre-existing disability being work related was squarely determined in *Chicago Mill & Lumber Co.* v. *Greer*, 270 Ark. 672, 606 S.W. 2d 72. In that case the claimant had a pre-existing amputation of his left leg. His amputation was not the result of a compensable injury. While working for Chicago Mill & Lumber Company he suffered an injury to his right leg which resulted in total disability. It was also expressly found by the Commission that the pre-existing amputation had independently caused disability prior to the second injury. The Court of Appeals affirmed the ruling of the Commission that the disability was not apportionable because the first injury was not a compensable one. In reversing the Court of Appeals, the Supreme Court said:

> Neither can we agree with the respondent Fund that the first injury must be an injury that would have been compensable under the act. It cites no cases so holding. However, it urges this is the interpretation compelled by the use of the words "disabilities" and "injuries" in the statute. Larson has discussed this matter in § 59-32:
>
>> Another attempt at narrowing the range of prior injuries covered has been the contention that only cases involving prior compensable disabilities were affected. This contention was based on a rather mechanical interpretation, arrived at by lifting the words 'prior disability' out of the second injury statute and applying to them the definition of 'disability' which appears elsewhere in the act. The Supreme Court of the United States rejected this artificial and technical reading of the provision, in the light of the well-known general purpose of the act, observing that 'From the attitude of experts in the field, one would not expect Congress to distinguish between two types of handicapped workers.'

> However, the prior impairment, although not actually a compensable disability, must have been of a physical quality capable of supporting an award if the other elements of compensability were present.

No contention is made that respondent Greer does not meet these requirements.

Nor does the fact that appellee's pre-existing infirmity resulted from a congenital abnormality affect the result. Unlike the congenital defects in *Wilson Hargett Construction Co.* v. *Holmes*, 235 Ark. 698, 361 S.W. 2d 634 (1962); *C. Finkbeiner, Inc.* v. *Flowers*, 251 Ark. 241, 471 S.W. 2d 772 (1971); and *McDaniel* v. *Hilyard Drilling Company*, 233 Ark. 142, 343 S.W. 2d 416 (1961), this appellee's disease was not latent. In making that distinction all our cases rely upon Larson's work on the subject. In *Larson's Workmen's Compensation Law*, vol. 2 § 59-32(c), he quotes from *Subsequent Injury Fund* v. *Industrial Accident Commission*, 56 Cal. 2d 842, 366 P. 2d 496 (1961):

> [T]he injury need not be reflected in actual disability in the form of loss of earnings ... but if it is not, it should at least be of the kind which could ground an award of permanent partial disability.

He then concludes:

> We have here a close parallel to the distinction observed in apportionment cases between a prior condition *not in itself disabling* but capable of being "lighted up" into actual disability by the subsequent injury, which should *not* support involvement of the Second Injury Fund, and a prior condition *competent to produce independently some degree of disability* which *is* a proper case for Second Injury Fund liability. (Emphasis added)

This appellee's condition had "lighted up" and was independently causing some degree of disability long before the second injury.

From the cases it is clear that apportionment does not apply unless the prior impairment was independently causing disability prior to the second injury and continues to operate as such after the accident. *Wilson Hargett Construction Co.* v. *Holmes*, supra; *C. Finkbeiner, Inc.* v. *Flowers*, supra; *McDaniel* v. *Hilyard Drilling Company*, supra. It is also clear from *Greer* that the fact that the prior disability was not job related and did not arise out of or in the course of a covered employment does not affect the duty to apportion. In all cases arising after January 1, 1981, this result will be dictated by Ark. Stat. Ann. § 81-1313 (i) (Repl. 1976) (Supp. 1981) rather than the case law as herein declared. All parties to this action concede that as this injury resulted prior to that effective date, the amendment does not apply to this case.

We are therefore of the view that the appellants employer-carrier are liable only for that portion of the total disability attributable to appellee's injury while in their employ and that the Second Injury Fund is liable for all additional compensation provided by the statute. The case will be remanded to the Commission with directions to make that determination and order payment accordingly.

In making its award the Commission relied heavily upon language contained in the Court of Appeals opinion in *Marshall* v. *Ouachita Hospital*, 269 Ark. 958, 601 S.W. 2d 901 (1980). In view of the rather peculiar circumstances surrounding the case we feel that our refusal to follow *Marshall* insofar as it may be at variance with the rules announced in *Greer* requires comment on the history of the cases.

*Greer* was initially decided by the Court of Appeals on July 2, 1980.[1] The Supreme Court granted a petition for certiorari to review that decision as it was based upon a tie vote in the Court of Appeals. The following week, July 9, 1980, the Court of Appeals handed down its unanimous opinion in *Marshall* in which it applied the same rule as it had in *Greer* the week before.[2] The Supreme Court denied

[1]269 Ark. 895, 601 S.W. 2d 583.
[2]269 Ark. 958, 601 S.W. 2d 901.

certiorari in *Marshall*, presumably because it was a unanimous decision. The Supreme Court's opinion reversing the Court of Appeals in *Greer* was not handed down until October 13, 1980.[3]

As the Supreme Court refused to review *Marshall*, the decision of the Court of Appeals became final and the cause was remanded to the Commission with directions to deny apportionment. Pursuant to that mandate the Commission entered such an order. On appeal from that order we were asked to again remand the matter to the Commission with directions to follow *Greer* and order apportionment. This we refused to do in an opinion handed down in *Marshall* v. *Ouachita Hospital*, 2 Ark. App. 273, 621 S.W. 2d 7 decided September 9, 1981, assigning as our reason that the matters decided in the July 1980 opinion were the law of the case and should be followed even if we might then feel that the July 1980 opinion was in error. As stated in *St. Louis S.W. Railway* v. *Jackson*, 246 Ark. 268, 438 S.W. 2d 41, the law of the case rule may in some cases be a harsh one, but when weighed on the scales of justice the confusion and uncertainty which would result without use of the doctrine has been found to outweigh the possibilities of harshness.

In the case now before the court we are not encumbered by that rule. We are, however, bound to follow and apply the law as declared by the Supreme Court. We are unable to reconcile the language from *Marshall*, on which the Commission relied, with the declaration of the Supreme Court in *Greer*, and decline to follow *Marshall*.

---

[3]270 Ark. 672, 606 S.W. 2d 72.