L.D. PERRY, Employee *v.* MAR-BAX SHIRT COMPANY, Employer, and LIBERTY MUTUAL INSURANCE COMPANY, Carrier

CA 84-303                                      698 S.W.2d 302

Court of Appeals of Arkansas
En Banc
Opinion delivered October 30, 1985
[Rehearing denied December 4, 1985.]

*Frederick S. "Rick" Spencer*, for appellant.

*Penix, Penix, Mixon & Lusby*, for appellee.

GEORGE K. CRACRAFT, Chief Judge. This is the second appeal of this workers' compensation case. In an unpublished opinion dated October 26, 1982 we remanded the case to the Arkansas Workers' Compensation Commission for clarification of evidentiary matters and for further review of the record to determine what effect, if any, the evidence as clarified had on the legal issues presented by the parties. In complying with the mandate the Commission found that the appellant had sustained permanent partial disability to the body as a whole. It further found that some portion of the total disability was apportionable to a preexisting disability resulting from arthritis. The Commission found that the degree of additional disability suffered by the claimant as a result of his compensable injury on May 30, 1980, "blending both physical impairment and wage loss factors together" amounted to 25% to the body as a whole. Appellant brings this second appeal contending that the Commission erred in not finding him to be totally disabled under the "Odd Lot Rule" and in the alternative that there was no basis for apportionment. We find merit only in his second argument.

Appellant sustained a compensable injury to his back on May 30, 1980 while moving a piece of heavy machinery. He was treated by his physician and returned to work on August 10, 1980. On September 18, 1980 he left his employment with appellee stating that he had accepted employment at higher pay in a mill in Mississippi. The appellee heard nothing further from appellant until his attorney contacted the company in January 1982.

The employer testified that appellant was a good worker and performed his duties satisfactorily and without complaint for twelve years. There was testimony that had appellant complained about his work or asked, appellee would have assigned him lighter duties. It was stated that appellant gave two reasons for quitting his employment—the mill in Mississippi would pay him almost twice the wages he was then receiving and the machinery in appellee's mill was getting on his nerves to such an extent that he felt a change was necessary. Appellant testified that before the injury he had experienced no difficulty with his back and was able to perform heavy work. After the injury he began having problems with his nerves and reached a point where he could not sleep at night. He stated that he tried to return to work after the injury but could not because of the pain. His daughter corroborated that testimony.

The appellant was fifty-three years of age and had a second grade education. He had worked most of his life as an unskilled laborer in the lumber industry and in appellee's shirt factory. He stated that because of his injury he could no longer hunt and fish, garden or properly do his household chores and spent most of his time lying on a couch. He stated that at the time of his job related injury at appellee's mill he had been "moonlighting" and holding down more than one job.

Dr. Douglas Stevens, a clinical psychologist, opined that appellant could not even perform light duties. Dr. Stevens stated that he was not a candidate for any work without rehabilitation to build his work tolerance and overcome emotional overlay.

Appellant's treating physician released him to return to work. Appellant was treated by Dr. Ledbetter and Richard M. Logue, both orthopedic surgeons. Both testified that his healing period had ended. Dr. Ledbetter rated the appellant's permanent partial disability as 15% to the body as a whole which he determined to be a combined rating of the job related injury and preexisting arthritis but was unable to separate the two. Dr. Logue determined his permanent partial disability to the extent of 20 to 30% overall. He attributed from 10% to 15% of his disability to the job related injury since he was working before the injury without complaint, and 10% to 15% to his preexisting arthritis.

■ The appellant contends that there is no substantial evidence to support a finding that appellant was not totally and permanently disabled. Our courts have long recognized that the wage loss factor, i.e., the extent "to which a compensable injury has affected claimant's ability to earn a livelihood" rather than the functional or anatomical loss, is generally controlling in workers' compensation determinations which are made on the basis of medical evidence, age, education, experience and other matters reasonably expected to affect the claimant's earning power. *Rooney & Travelers Ins. Co.* v. *Charles*, 262 Ark. 695, 560 S.W.2d 797 (1978); *Glass* v. *Edens*, 233 Ark. 786, 346 S.W.2d 685 (1961).

Although the testimony of Dr. Stevens and the appellant might warrant a finding of total disability the extent of our inquiry on appeal is to determine if the finding of the Commission is supported by substantial evidence and we will affirm if reasonable minds could reach the conclusion the Commission reached. *Bankston* v. *Prime West Corporation*, 271 Ark. 727, 610 S.W.2d 586 (Ark. App. 1981).

■ It is clear from the opinion of the Commission that it considered the wage loss factor set forth in *Glass* v. *Edens, supra.* Although the Commission's knowledge and experience is not evidence, once it has before it firm medical and lay evidence of physical impairment and functional limitations it has the advantage of its own superior knowledge of industrial demands, limitations and requirements and can apply its knowledge and experience in weighing the medical evidence of functional limitations together with other evidence of the manner in which the functional disability will affect the ability of the injured employee to obtain a job and thereby arrive at a reasonably accurate conclusion as to the extent of permanent partial disability as related to the body as a whole. *Rooney & Travelers Ins. Co.* v. *Charles, supra; Bearden Lumber Co.* v. *Bond*, 7 Ark. App. 65, 644 S.W.2d 321 (1983). From our review of the record viewed in the light of these principles, we cannot say that reasonable minds could not reach the Commission's conclusion.

The appellant next contends the Commission erred in apportioning the total disability between the preexisting disease and the disability attributable to the job related injury. All parties

concede that the Commission was correct in concluding that the provisions of Ark. Stat. Ann. § 81-1313(f)(2) (Repl. 1976), which was in effect at the time of the injury, governs the rules of apportionment.

In a series of cases we have held that the question of whether apportionment is proper does not depend upon whether the preexisting disability was work related or otherwise a compensable disability under the act. The rule has been established, however, that the prior impairment, although not actually a compensable disability, must have been of a physical quality sufficient to produce independently some degree of *disability* before the accident and continued to do so after it. *Harrison Furniture Co.* v. *Chrobak,* 2 Ark. App. 364, 620 S.W.2d 955 (1981); *Chicago Mill & Lbr. Co.* v. *Greer,* 270 Ark. 672, 606 S.W.2d 72 (1980); *McDaniel* v. *Hilyard Drilling Co.,* 233 Ark. 142, 343 S.W.2d 416 (1961).

It was made clear that disability or impairment within the contemplation of the Workers' Compensation Act means loss of earning capacity. *Harrison Furniture Co.* v. *Chrobak, supra,* and *Osage Oil Co.* v. *Rogers,* 15 Ark. App. 319, 692 S.W.2d 786 (1985).

Appellee contends that there is substantial evidence to support the Commission's finding that this was a proper case for apportionment. We do not agree.

Appellee relies on testimony that appellant had injured his back in 1960 and that Dr. Ledbetter made a notation in his report of December 8, 1980 that the earlier injury "was very resistant to treatment." Appellant was asked if the symptoms suffered after the most recent injury were the same as those suffered in the earlier injury. He stated that they were but "didn't just keep hanging with me." This testimony is corroborative of the finding of a preexisting condition but does support a finding of the required diminished earning capacity.

The record discloses that the appellant had been engaged in hard manual labor all of his life and had performed such labor at appellee's mill for twelve years preceding the job related injury. He had returned to work six weeks after the 1960 injury. There was no evidence that he had had any difficulty with his back since

the 1960 injury or that the resulting arthritis had since affected his ability to earn. According to the appellee's personnel manager appellant was a good worker and he was aware of no complaints. The appellant testified that he had suffered no difficulty from the arthritis prior to the accident and in fact was then holding down two jobs involving hard manual labor. He had terminated his employment at the appellee's mill, not because of physical impairment, but to engage in heavier work at higher wages.

■ Although our standard of review of workers' compensation cases is that they shall be affirmed if there is any substantial evidence to support the finding, we have also held that whether evidence is substantial in nature is a question of law. *Cummings* v. *United Motor Exchange*, 236 Ark. 735, 368 S.W.2d 82 (1963). In this case we find no substantial evidence to support a finding that the preexisting arthritis was independently producing any degree of disability resulting in diminished earning capacity prior to the job related accident.

The Commission made no finding on the total percentage of disability to the body as a whole resulting from combined anatomical rating and wage loss factors. It merely declared that only 25% of his present disability is attributable to the second injury. The finding of the Commission that appellant was not totally and permanently disabled is affirmed. The case is remanded with directions that the Commission determine appellant's total percentage of disability to the body as a whole and enter its award accordingly.

Reversed and remanded.