## Lewis R. DAVIS v. STEARNS-ROGERS CONSTRUCTION CO. et al

5-5208                                          451 S. W. 2d 469

Opinion delivered March 23, 1970

*Huey & Vittitow,* for appellant.

*John M. Lofton, Jr.,* for appellees.

Conley Byrd, Justice. Involved on this appeal is the interpretation of the successive disabilities section of our Workmen's Compensation Act, Ark. Stat. Ann. § 81-1313(f)(2)(ii) (Repl. 1960 and Supp. 1969).

The record shows that at the time of his injury on February 17, 1967, Davis had already received Workmen's Compensation awards for a total of 75% disability to the body as a whole. In addition he was drawing total disability from the Social Security Administration and had gone to work for appellee Stearns-Rogers

Construction Co. on a trial basis at the suggestion of the Social Security people. He was injured during the first three months of his return to gainful employment.

Appellant's claim was first presented to the Commission on a joint petition for a lump sum settlement on the basis of an additional 15% permanent disability. After the joint petition was denied, the claim was submitted to the Commission upon the testimony of Davis and Dr. Richard Logue.

Davis testified that he had received a tenth grade education; that his only occupation was that of an iron worker; and that his most recent injury had rendered him unable to work. In July 1960, he had been awarded 10% permanent partial disability for an injury sustained while employed by Chemical Construction Company. In December 1961, he had received an additional 10% permanent disability for another injury while employed by the same company. In December 1962, he received an additional 10% disability for an injury sustained while working for Tidewater Construction Company. In May 1966, he had received an additional 45% disability for an August 1964, injury sustained while working for Papco, Inc. At the time of his injury on February 15, 1967, he was drawing, in addition to his earnings and with the knowledge of the Social Security people, full Social Security disability benefits.

Dr. Richard M. Logue testified that he had treated Davis off and on for some time. He had estimated that he had a total disability of 37½% as a result of his injury May 10, 1962, and a total disability from 75 to 80% as a result of his 1964 injury. When he saw Davis on October 24, 1967, he thought Davis had an additional disability of 15% because of the February 1967, injury, but when he again saw him on April 8, 1968, he was distressed to see his mental and physical condition On the latter date, Davis was not able to perform any type of labor from a physical and mental standpoint. In his opinion as an orthopedist there was

a connection between physical disabilities sustained by Davis and his regressed mental condition. On cross-examination he stated that Davis' 1967 injury may have caused a flare-up of something that had become quiescent.

The Commission's award is summed up in its written opinion as follows:

"The issue before the Full Commission is the extent of disability suffered by Claimant as a result of his compensable injury of February 15, 1967. The evidence reflects that the Claimant sustained a 15 percent physical impairment as a result of the injury to his neck and shoulders on February 15, 1967. As a result of said injury he is now incapable of working, or said another way, his capacity to earn is now completely diminished. Prior to the injury of February 15, 1967, Claimant had been paid compensation benefits as the result of several injuries to his back in the aggregate of 75 percent to the body as a whole. It is to be noted that none of the previous injuries sustained by Claimant were in the same employment. This raises the question of whether the present employer-respondent is entitled to receive credit for the 75 percent permanent partial disability previously paid by others as a result of injuries. If we proceed on the premise that the employer takes a workman as he finds him, then no credit can be allowed. In other words, an employee, while in the employment of Employer 'A', sustains an injury which renders him totally disabled and he subsequently establishes an earning capacity with Employer 'B' and suffers a subsequent injury while in the employment of Employer 'B' which renders him again totally disabled; can he be paid for the second total incapacity caused by the injury while in the employment of Employer 'B'? We believe he can and should be. In the case of *O. K. Processors, Inc.* v. *Charles Dye,* 241 Ark. 1002, the Supreme Court held that the question to be decided is the

extent of disability caused by the present injury disregarding all previous disabilities and that is what we do here. The evidence clearly reflects that the Claimant is totally disabled as the result of the injury of February 15, 1967, and said injury caused the total incapacity. Therefore, Claimant is entitled to compensation for total disability as a result thereof."

The Circuit Court in reviewing the record pursuant to Ark. Stat. Ann. § 81-1325 (Repl. 1960 and Supp. 1969), held that the evidence was insufficient to sustain the Commission's award and fixed the compensation at 15% to the body as a whole. For the reasons hereinafter stated we reverse and remand to the Workmen's Compensation Commission for a determination of the degree of disability that would have resulted from February 1967, injury if the previous disability had not existed.

The statute here involved, Ark. Stat. Ann. § 81-1313(f)(2)(ii), provides:

"If the subsequent injury is one that is not scheduled under section 13(c), the injured employee shall be paid compensation for the healing period and for the degree of disability that would have resulted from the subsequent injury if the previous disability had not existed."

It appears that the Commission has here taken the view that, if the employee is capable of gainful employment, the subsequent employer must take the employee as the employer finds him and that for purposes of compensation, the Commission may disregard previous disabilities. That is neither our understanding of the statute above, nor of our holding in *O. K. Processors, Inc.* v. *Dye*, 241 Ark. 1002, 411 S. W. 2d 290 (1967).

Our understanding of Ark. Stat. Ann. § 81-1313(f) (2) (ii), is that if Davis' prior disabilities are a con-

tributing factor to his present total permanent disability, then Stearns-Rogers Construction Co., as a subsequent employer, is not liable for 100% of the total permanent disability but only for that degree which would have resulted had the prior disability not existed.

The reason for the apportionment of liability for compensation for permanent disability between prior and subsequent injuries is stated in Larson Workmen's Comp. Vol. 2, § 59.31 as follows:

"While at first glance it might appear that the apportionment rule favors the employer and non-apportionment the employee, in practice the non-apportionment rule proved the worse of the two evils from the standpoint of the handicapped worker. As soon as it became clear that a particular state had adopted a rule requiring an employer to bear the full cost of total disability for loss of the crippled worker's remaining leg or arm, employers had a strong financial incentive to discharge all handicapped workers who might bring upon them this kind of aggravated liability. When loss of a single eye might mean a compensation liability of $5,000 for a man with two good eyes but $26,000 for a man with only one, the compensation insurance premium on the latter would naturally be markedly greater. It has been said, for example, that within the thirty days following the announcement of the nonapportionment rule in *Nease* v. *Hughes Stone Company*, [114 Okla. 170, 244 P. 778 (1925)], between seven and eight thousand one-eyed, one-legged, one-handed men were displaced in Oklahoma."

Neither do we interpret our opinion in *O. K. Processors, Inc.* v. *Dye, supra,* as holding to the contrary. In that case we held that the degree of disability resulting from the subsequent injury was a question of fact for the Commission. In so holding we partially quoted from Larson Workmen's Comp. Vol. 2, § 59.42.

The full paragraph in Larson from which we quoted is as follows:

"The capacities of a human being cannot be arbitrarily and finally divided and written off by percentages. The fact that a man has once received compensation as for 50 percent of total disability does not mean that ever after he is in the eyes of compensation law but half a man, so that he can never again receive a compensation award going beyond the other 50 percent of total. After having received his prior payments, he may, in future years, be able to resume gainful employment. In the words of the Colorado court, he may have resumed employment as a 'working unit'. If so, there is no reason why a disability which would bring anyone else total permanent disability benefits should yield him only half as much."

There is nothing in the foregoing quote from Larson inconsistent with what we have said above. A further elucidation of this statement can be found in cases cited by Larson. For instance, in *Young* v. *Dreamland Bedding Co.,* 133 So. 2d 414 (Fla. 1961), the employee during World War I had lost his index, middle and ring fingers on his left hand but through utilization of his little finger and thumb had successfully carried on his occupation as a carpenter. For an injury to his little finger that made it impossible to longer use his hand, the Florida court reinstated a commissioners award of 90% loss of use of the hand on the ground that the pre-existing loss was only a 50% functional but nondisabling loss of the hand. Larson points out the correctness of the decision under the apportionment statutes which allow compensation for *disability that would have existed if the prior injury had not occurred.*

The circuit court's determination that the evidence would not support an award in excess of 15% permanent disability was in part based upon the premise that Dr. Logue's testimony would not support a finding that Davis' present mental depression resulted from his last

injury. In this the court was in error, for Dr. Logue stated that, as an orthopedist, he thought there was a connection between Davis' physical disabilities and his regressed mental condition.

Under our decision in *Burrow Construction Co.* v. *Langley,* 238 Ark. 992, 386 S. W. 2d 484 (1965), we are remanding the case with directions to remand the cause to the Commission for a determination of a proper award in accordance with this opinion.