INTERNATIONAL PAPER Company *v.*
Emerson D. REMLEY

73-225                                    505 S.W. 2d 219

Opinion delivered February 19, 1974

*Bridges, Young, Matthews & Davis,* for appellant.

*Youngdahl, Brewer, Huckabay, Funk & Larrison,* for appellee.

GEORGE ROSE SMITH, Justice. This workmen's compensation case concerns a second injury to the appellee's right hand. The first injury occurred in 1934, before Arkansas had a workmen's compensation act and 34 years before the

appellee went to work for the appellant, who is a self-insurer. The first injury, according to the proof in this case, resulted in a 20% partial disability of the hand, but there was no permanent impairment of Remley's earning capacity.

The second injury occurred in 1971, after Remley had gone to work for the appellant. That injury resulted in an additional 15 per cent permanent partial disability of the hand; but again there was no permanent impairment of earning capacity, it being shown that after his healing period Remley returned to work with no reduction in wages. The commission's decision, which was affirmed by the circuit court, awarded compensation for the entire 35 per cent disability, upon the theory that apportionment would be contrary to the general purposes of the act and to our decisions in *Wilson Hargett Constr. Co.* v. *Holmes*, 235 Ark. 698, 361 S.W. 2d 634 (1962), and *Davis* v. *Stearns-Rogers Constr. Co.*, 248 Ark. 344, 451 S.W. 2d 469 (1970). The appellant insists that it is responsible only for the 15 per cent disability suffered in its employ.

The cases and the statute both tend to sustain the appellant's position. Our prior opinions, in construing the pertinent sections of the compensation act, have given effect to two matters of policy that are important here. First, we have drawn a distinction, as far as earning capacity is concerned, between scheduled injuries and non-scheduled injuries. The *Wilson* and *Davis* cases, relied upon by the commission, are not persuasive here, because they inolved non-scheduled injuries. Where, as here, a scheduled injury is involved, we have held that it is immaterial that the claimant has suffered no loss of earnings. *Anchor Constr. Co.* v. *Rice*, 252 Ark. 460, 479 S.W. 2d 573 (1972). In that case we quoted Larson's justification for the rule, which avoids protracted and uncertain administrative calculations by "the apparently cold-blooded system of putting average-price tags on arms, legs, eyes, and fingers." Of course the courts are bound by the legislature's decision to adopt a rigid rule in the case of scheduled injuries.

In the second place, workers as a whole will not always benefit in the long run by a rule of non-apportionment that makes an employer liable for the total consequences of a second injury, as if the first injury had not occurred. Such a rule

might easily make it hard for the victims of a first injury to find re-employment. In *Davis, supra*, we quoted this observation from Larson: "It has been said, for example, that within the thirty days following the announcement of the nonapportionment rule in *Nease* v. *Hughes Stone Company*, [114 Okla. 170, 244 P. 778 (1925)], between seven and eight thousand one-eyed, one-legged, one-handed men were displaced in Oklahoma."

Both of the foregoing rules of policy are pertinent here. That is, the fact that Remley's 1934 injury did not result in a loss of earning capacity is not of paramount importance, because the act provides a fixed schedule of payments for an injury to the hand. Secondly, a rule denying apportionment as between two injuries is not necessarily a desirable one for all workmen. Again, the courts are bound by the legislative decision upon an issue of policy.

The language of the statute points to the same conclusion. In quoting the governing section of the compensation act we have italicized the two pivotal references to *permanent disability*:

> "If an employee has a prior *permanent disability* not occasioned by an injury resulting while in the employ of the same employer in whose employ he received a subsequent permanent injury, the amount of compensation for the subsequent injury shall be fixed as follows:

> "i. If the subsequent permanent injury is one that is scheduled under section 13 (c), and to the same member the injured employee shall be paid compensation for the healing period and for the *permanent disability* occasioned only by the subsequent injury, but not to exceed the time specified in section 13 (c)." Ark. Stat. Ann. § 81-1313 (f) (2) (Supp. 1973).

The appellee, as a basis for his argument against apportionment, is driven to the contention that the two references to *permanent disability*, though appearing in the same sentence, do not have the same meaning with respect to the loss of earning capacity. That is, the appellee must argue that

there was no *permanent disability* as a result of the 1934 injury, because there was no loss of earning capacity. Yet there was also no loss of earning capacity as a result of the 1971 injury; so if the second reference to *permanent disability* has the same meaning that the appellee attributes to the first reference, he has no basis for any recovery at all. Thus he must insist that the first statutory mention of *permanent disability* refers to loss of earning capacity, while the second refers only to a functional loss. We must reject this self-contradictory argument, for which we find no support either in the language or in the policy of the statute. As in other instances of scheduled injuries, we consider the loss of earning capacity to be immaterial. Therefore the appellee's recovery for the functional loss caused by the second injury cannot, under the statutory language, include the functional loss caused by the first injury.

As a secondary contention for reversal the appellant argues that it did not controvert the appellee's claim to 15 per cent permanent partial disability and therefore should not have been held liable by the commission for the claimant's attorney's fee with regard to that part of the claim. We must affirm the commission's decision upon this point. The appellant, in offering to make payment to Remley for the 15 per cent disability first assessed by the treating physician, demanded that Remley accept a check containing the notation, "Final settlement." Remley, in refusing the offer, could not be expected to know that the notation was not really as conclusive upon his rights as it seemed to be. Moreover, when Remley's attorney (whom he employed later on) asked the appellant to pay the 15 per cent claim that is now said to have been uncontroverted, the appellant disregarded that request at least until a hearing was had some six weeks later. We consider these facts to be substantial evidence indicating that the appellant was using its control of the purse-strings as a coercive means of controverting the claim in fact if not by its formal pleadings.

Affirmed in part and reversed in part.