CHICAGO MILL & LUMBER
COMPANY, Employer *v.* Starling GREER, Employee,
and STATE of Arkansas, Second
Injury Fund

80-157                                    606 S.W. 2d 72
Supreme Court of Arkansas
Opinion delivered October 13, 1980

*Daggett, Daggett & Van Dover*, for petitioner.

*Mike J. Etoch* and *Steve Clark*, Atty. Gen., by: *Robert R. Ross*, Deputy Atty. Gen., for respondents.

FRANK HOLT, Justice. At the time petitioner employed respondent Greer, he had a wooden left leg as a result of an accident many years previously. In January, 1978, the employee suffered a fracture of his right ankle at work, an acknowledged compensable injury. The Commission found that as a result of the amputation of his left leg and 40% impairment of his right leg the employee was permanently and totally disabled; the preexisting amputation of the left leg was independently causing a disability; and the statutory Second Injury Fund, Ark. Stat. Ann. § 81-1313 (f) (2) (iii), was inapplicable as to payment of any disability claim. The loss was then apportioned. Petitioner Chicago, Mill was given a credit against the $50,000 maximum liability for $10,500, which was found to be the value of the preexisting amputation, a scheduled injury. The Commission ordered that, after payment by the petitioner of the $39,500 balance in weekly benefits, any further benefits due the employee for his total disability be paid from the Death & Permanent Total Disability Bank Fund. The circuit court affirmed the Commission. The Court of Appeals affirmed in a 3-3 decision. *Chicago Mill & Lumber Co.* v. *Greer*, 269 Ark. 895, 601 S.W. 2d 583 (1980). We granted certiorari.

The Commission's finding that respondent Greer is totally and permanently disabled as a result of the combined injuries is not questioned. The primary issue, the applicability of the Second Injury Fund, involves an interpretation of § 81-1313:

(f) Second injury: In cases of permanent disability arising from a subsequent accident, where a permanent disability existed prior thereto: . . .

(2)(iii) If an employee who had previously incurred permanent partial disability through the loss of one [1]

hand, one [1] arm, one [1] foot, one [1] leg, or one [1] eye, incurs permanent total disability through the *total* loss of another member, . . . he shall be paid in addition to the compensation for permanent and partial disability provided in Section 13 (c) . . . . additional compensation . . . . (Italics supplied.)

This section further provides that additional compensation be paid out of a special fund created for this purpose, the Second Injury Fund. Originally the section did not include the word "total". Therefore, the respondents argue that this word was added in the 1948 amendment to emphasize requiring a total loss of the member. Petitioner, however, contends that the words "total loss of another member" should be construed from a disability viewpoint rather than an anatomical viewpoint. Consequently, from an employment standpoint, the claimant has "totally lost" the use of the his right leg since he is admittedly totally and permanently disabled as a result of the combined injuries.

The precise issue presented appears to be one of first impression. *Arkansas Wormen's Compensation Comm'n v. Sandy*, 217 Ark. 821, 233 S.W. 2d 382 (1950), the only case relied upon by respondents, is not controlling. There the claimant had previously lost four fingers of his left hand, having only the thumb remaining. In a subsequent injury, his right arm was amputated above the elbow. A claim was filed under the Seccond Injury Fund. The Commission denied the claim, finding he was not totally and permanently disabld. We affirmed, stating the extent of the disability was a factual issue. Here, however, the Commission found there is total and permanent disability.

Larson, Workmen's Compensation Law, § 59-31, notes that the Second Injury Fund, adopted in all but one state (Supp. 1980), is the solution to the dilemma of responsibility of an employer when a second injury occurs. "The usual provision makes the employer ultimately liable only for the amount of disability attributable to the particular injury occurring in his employment, while the fund pays the difference between that amount and the total amount to which the employee is entitled for the combined effects of his prior and

present injury." § 59-31. "The primary policy of the legislation is well understood; it is to remove the competitive employment disadvantage suffered as a result of compensation law by handicapped workers in states having a nonapportionment background, and to remedy the inadequacy of awards to such workers in states previously apportioning disability." § 58-32. ". . . [S]everal states have special apportionment provisions in their statutes, under which an employee with a prior disability receives for a subsequent disability only what he would have been entitled to for the latter disability considered alone." § 59-20, Supp. 1980 citing *Intl. Paper Co.* v. *Remby*, 256 Ark. 7, 505 S.W. 2d 219 (1974). In that case we held the employee was entitled to collect only for the new injury from the second employer.

Further, the statute in question, § 81-1313 (f) (2) (iii), was recently amended by adding a new subsection to be effective January 1, 1981. See Act 253 of 1979. The amendment which clarifies any uncertainties, provides in pertinent part:

> If the previous disability or impairment or disabilities or impairments whether from compensable injury or otherwise, and the last injury together result in total and permanent disability, the employer at the time of the last injury shall be liable only for the disability resulting from the last injury considered alone and of itself; . . . the employee shall be paid the remainder of the compensation that would be due for permanent total disability under Section 10 [§ 81-1310] out of the second injury fund.

In the circumstances, we are of the view that the petitioner is only liable for the degree of disability that· the respondent employee suffered during his employment with it, and the Second Injury Fund is responsible for the additional compensation as provided in the statute.

Neither can we agree with the respondent Fund that the first injury must be an injury that would have been compensable under the act. It cites no cases so holding. However, it urges this is the interpretation compelled by the use of the

words "disabilities" and "injuries" in the statute. Larson has discussed this matter in § 59-32:

> Another attempt at narrowing the range of prior injuries covered has been the contention that only cases involving prior compensable disabilities were affected. This contention was based on a rather mechanical interpretation, arrived at by lifting the words 'prior disability' out of the second injury statute and applying to them the definition of 'disability' which appears elsewhere in the act. The Supreme Court of the United States rejected this artificial and technical reading of the provision, in the light of the well-known general purpose of the act, observing that 'From the attitude of experts in the field, one would not expect Congress to distinguish between two types of handicapped workers.'
>
> However, the prior impairment, although not actually a compensable disability, must have been of a physical quality capable of supporting an award if the other elements of compensability were present.

No contention is made that respondent Greer does not meet these requirements.

The Commission properly awarded Greer's attorney the *statutory maximum fee on all benefits controverted.* However, it did not make a finding as to the responsiiblity for payment. The petitioner and later the trial court requested the Commission to clarify its finding, which it did not do. Upon remand the Commission is directed to clarify the issue and order full payment of the statutory award.

Reversed and remanded.

STROUD, J., dissents.

JOHN F. STROUD, Justice, dissenting. I respectully dissent with the interpretation of Ark. Stat. Ann. § 81-1313(f)(2)(iii) (Repl. 1976) given by the majority opinion. The applicable portion of the statute provides:

(f) Second injury: In cases of permanent disability aris-

ing from a subsequent accident, where a permanent disability existed prior thereto: . . .

(2)(iii) If an employee who had previously incurred permanent partial disability through the loss of one [1] hand, one [1] arm, one [1] foot, one [1] leg, or one [1] eye, incurs permanent total disability through the *total* loss of another member, enumerated in this sentence, he shall be paid in addition to the compensation for permanent and partial disability provided in Section 13 (c) . . . additional compensation . . . (Emphasis added.)

The amendment made to the statute in 1948 only added the word "total." I can conceive of no reason for the General Assembly to have amended the statute and added the word "total" unless it meant for the Second Injury Fund to be applicable only upon the "total loss of another member." The majority opinion construes the statute as urged by Petitioner from a disability viewpoint rather than from an anatomical viewpoint. If the legislature had intended for the Second Injury Fund to be applicable when the use of a second member is lost, I believe it would have said so by inserting the appropriate words "total loss *of use* of another member."

The General Assembly has seen fit to amend the statute again, and, among other things, makes the Second Injury Fund applicable when a loss of use of a second member occurs:

If the previous disability or impairment or disabilities or impairments whether from compensable injury or otherwise, and the last injury together result in total and permanent disability, the employer at the time of the last injury shall be liable only for the disability resulting from the last injury considered alone and of itself; . . . the employee shall be paid the remainder of the compensation that would be due for permanent total disability under Section 10 [§ 81-1310] out of the special fund known as the second injury fund.

Ark. Stat. Ann. § 81-1313 (i)(1) (Supp. 1979).

The amendment just quoted does not become effective until January 1, 1981. The majority opinion has in effect amended the statute prior to its effective date to reach the same result provided by the latest amendment. I would affirm the finding of the Arkansas Workers' Compensation Commission and the decision of the Arkansas Court of Appeals that the Second Injury Fund is inapplicable to the claim of respondent Starling Greer.