OSAGE OIL COMPANY *v.* Harold ROGERS and
SECOND INJURY FUND

CA 84-307                                    692 S.W.2d 786

Court of Appeals of Arkansas
Division II
Opinion delivered July 3, 1985

*Odom, Elliott & Martin*, by: *Bobby L. Odom*, for appellant.

*Steve Clark*, Att'y Gen., by: *David S. Mitchell*, Asst. Att'y Gen.

MELVIN MAYFIELD, Judge. This is an appeal from a Workers' Compensation Commission decision holding that the claimant, Harold Rogers, was totally and permanently disabled and that the Second Injury Fund had no liability in the case.

Claimant, a sixty-six-year-old retired carpenter, was drawing social security and working for Osage Oil Company to supplement his income. On August 10, 1981, he was on a scaffolding repairing a canopy over some gasoline pumps when a car struck the scaffolding and threw him to the concrete eight feet below. He was knocked unconscious, sustained a broken right elbow, and received an injury to his hip.

The record shows that claimant, who was right-handed, had worked steadily in construction since 1945 and had taken only one vacation during that time. As a result of this injury, he is now unable to use his right hand, cannot walk or sit for any length of time, and has dizzy spells. The doctor's report indicates that claimant's medical condition is deteriorating. He cannot perform any work requiring repetitive or heavy use of his right elbow; progressive changes in his hip indicate he will eventually have to have it replaced by a prosthesis; and he is developing arthritis.

The administrative law judge held that while the claimant was, in fact, totally disabled from his compensible injury, it was unfair for the employer to be required to pay total disability to someone 64 years old who was already drawing social security. Therefore, he awarded claimant 25% disability to the body as a whole. Claimant appealed to the full Commission which held that the law judge had erred and awarded claimant total disability. Although claimant had been awarded a 10% disability rating by the Veterans Administration for frostbite to his feet suffered while in military service in Germany in 1944, both the law judge and the Commission found that he had no disability prior to the fall from the scaffolding which would make the Second Injury Fund liable for any portion of his compensation. The employer now appeals to this court contending (1) that there was no

substantial evidence to uphold the decision of the Commission that the claimant was totally and permanently disabled and, (2) that the employer's liability should not exceed the 35% permanent partial disability to the right elbow, and 15% permanent partial disability to the body as a whole, assessed by the claimant's treating physician.

On the first point we need merely to point out that on appellate review the evidence and all inferences deducible therefrom must be viewed in the light most favorable to the finding of the Commission. We give the testimony its strongest probative force in favor of the action of the Commission, whether it favored the claimant or the employer. *Roberts* v. *Leo Levi Hospital*, 8 Ark. App. 184, 649 S.W.2d 402 (1983). We must affirm if the Commission's finding is supported by substantial evidence; even when a preponderance of the evidence might indicate a contrary result, we affirm if reasonable minds could reach the Commission's conclusion. Questions of credibility and the weight and sufficiency of the evidence are matters for determination by the Commission. The Workers' Compensation Commission is better equipped, by specialization and experience, to analyze and translate evidence into findings of fact than we are. *Bemberg Iron Work* v. *Martin*, 12 Ark. App. 128, 671 S.W.2d 768 (1984). We believe the record contains substantial evidence to support the Commission's finding that the claimant was totally disabled.

On the next point the appellant argues that it is uncontested that the claimant has a preexisting 10% disability for which he receives compensation from the Veterans Administration and that consequently the Commission erred in holding that the Second Injury Fund did not apply. The first two sentences of Ark. Stat. Ann. § 81-1313(i)(1)(Supp. 1983) provide:

The Second Injury Fund established herein is a special fund designed to insure that an employer employing a handicapped worker will not, in the event such worker suffers an injury on the job, be held liable for a greater disability or impairment than actually occurred while the worker was in his employment. The employee is to be fully protected in that the Second Injury Fund pays the worker the difference between the employer's liability and the balance of his disability or impairment which results from

all disabilities or impairments combined.

Appellant takes the position that the term "disability" used in the statute means incapacity to earn money and that "impairment" means the loss of physical function. It is pointed out that the second paragraph states "where there has been previous disability or impairment," and appellant argues that by using "disability or impairment" in the disjunctive, the legislature intended for the Second Injury Fund to be liable regardless of whether a claimant's loss of physical function resulted in a loss of earning capacity.

██ The Second Injury Fund is an appellee here and it responds to the appellant's argument by pointing out that prior to 1979, Ark. Stat. Ann. § 81-1313(f)(2)(iii)(Repl. 1976) provided that payments from the Fund were to be made under very limited circumstances, but that the scope of the Fund's liability has been expanded by legislative action in 1979 and 1981 so that all employees with a preexisting disability who receive a second injury on the job are now covered. The Fund also points out that one of the changes made by Section 4 of Act 290 of 1981 was to amend the previous statutory provision by adding the words "or impairment" after the word "disability" in several places where the word "disability" appeared. The Fund does not agree that the purpose of this was to broaden the exposure of the Fund to any case where the prior condition only manifested itself in anatomical loss without independently producing some degree of disability. The explanation for adding the words "or impairment," as we understand the Fund's argument, starts with the case of *Chicago Mill & Lbr. Co. v. Greer*, 270 Ark. 672, 606 S.W.2d 72 (1980), where the Arkansas Supreme Court held that the Second Injury Fund was responsible for the additional compensation due where the employer at the time of the last injury was only liable for the degree of disability caused by the last injury. The court said it did not agree that the first injury had to be one that would have been compensable under the Workers' Compensation Act. The court said, "Larson has discussed this matter in § 59-32:"

> Another attempt at narrowing the range of prior injuries covered has been the contention that only cases involving prior compensable disabilities were affected. This contention was based on a rather mechanical inter-

pretation, arrived at by lifting the words 'prior disability' out of the second injury statute and applying to them the definition of 'disability' which appears elsewhere in the act. The Supreme Court of the United States rejected this artificial and technical reading of the provision, in the light of the well-known general purpose of the act, observing that 'From the attitude of experts in the field, one would not expect Congress to distinguish between two types of handicapped workers.'

However, the prior impairment, although not actually a compensable disability, must have been of a physical quality capable of supporting an award if the other elements of compensability were present.

The *Greer* case was handed down in October of 1980 and in March of the next year the legislature passed Act 290 of 1981 and added the words "or impairment" after the word "disability" to make it clear that the first injury did not have to be one that would be compensable under the Compensation Act, but that payments could be made from the Second Injury Fund where there had been a previous "disability or impairment." We agree with the Fund's argument that "impairment" in Ark. Stat. Ann. § 81-1313(i) means loss of earning capacity due to a non-work related condition. This was made clear by *Harrison Furniture* v. *Chrobak*, 2 Ark. App. 364, 620 S.W.2d 955 (1981), and *Craighead Memorial Hospital* v. *Honeycutt*, 5 Ark. App. 90, 633 S.W.2d 53 (1982), which relied upon *Greer* and its language from Larson's *Workmen's Compensation Law*. In *Craighead Memorial*, we said:

While we said in *Harrison* that apportionment did not depend upon the preexisting disability being job related, we also said that it is clear that apportionment does not apply unless the prior impairment was independently causing disability prior to the second injury and continued to do so after that injury.

■ The appellant says the purpose of the Second Injury Fund is to encourage the hiring of the handicapped and if the Commission's decision in this case is allowed to stand, then the intent of the legislature will be frustrated. The Fund, however, says that the purpose of the Act is to encourage the employment

of handicapped workers by providing that in the event of injury to those workers the employer will not have to pay for any more disability than actually occurred in his employment, and that the purpose of the Act is not to give a windfall or subsidy to those employers. We agree.

Applying the law stated above, we find there is substantial evidence to support the Commission's finding that claimant's disability resulted solely from his fall from the scaffolding while in the course and scope of his employment by the appellant, and that the Second Injury Fund has no liability for any portion of the compensation due claimant.

Affirmed.

CRACRAFT, C.J., and COOPER, J., agree.