DEL MONTE FROZEN FOODS, INC. *v.* HARMON

CA 85-462                                716 S.W.2d 784

Court of Appeals of Arkansas
En Banc
Opinion delivered October 1, 1986
[Rehearing denied October 22, 1986.*]

---

*Cloninger and Glaze, JJ., would grant rehearing.

*Hardin, Jesson & Dawson*, for appellant.

*Laws & Swain, P.A.*, by: *William S. Swain*, for cross-appellant and appellee Limmel W. Harmon.

*Thomas J. O'Hern*, for appellee Second Injury Fund.

DONALD L. CORBIN, Judge. Appellant, Del Monte Frozen Foods, Inc., appeals the decision of the Workers' Compensation Commission which awarded Limmel W. Harmon, cross-appellant and appellee in this case, benefits based on a 70% permanent partial disability rating. Appellant argues on this appeal that the Second Injury Fund, appellee, should bear a portion of the expense of Harmon's injury due to a prior impairment. We affirm the Commission's finding on this point.

In the cross-appeal, Limmel Harmon, cross-appellant and appellee, appeals the finding of the full Commission which reduced the permanent total disability rating awarded to Harmon by the Administrative Law Judge to 70% permanent partial disability. We affirm the full Commission's finding on this point as well.

On July 15, 1982, Harmon sustained an injury consisting of a lumbosacral strain arising out of and occurring in the course of his employment by Del Monte. On July 9, 1954, Harmon sustained a non-compensable fracture of his pelvis while engaged in military service. As a result of the fractured pelvis, Harmon received a permanent disability rating of 10% to the body as a whole. On or about February 21, 1963, Harmon was diagnosed as having spondylolisthesis at L5 with left hip pain secondary thereto. On April 18, 1963, surgery was performed to effect a lateral lumbosacral fusion. Following the lumbosacral fusion, Harmon experienced a two-year period during which he remained in a back brace. He was practically asymptomatic from the spondylolisthesis from that time up until the July 15, 1982, lumbosacral strain arising out of his employment at Del Monte. Harmon was relatively asymptomatic from the July 9, 1954, pelvis fracture after 1963.

Following the July 15, 1982, compensable injury, Harmon attempted to return to work for Del Monte but was unable to endure extended periods of work activity. He has been advised by his physicians to limit lifting, bending and twisting. He was under no such limitations prior to July 15, 1982. As a result of the July 15, 1982, lumbosacral strain, Harmon sustained an actual anatomical impairment of 5% to the body as a whole. The Commission found that the lumbosacral strain aggravated Harmon's pre-existing condition of spondylolisthesis. The full Commission made the following conclusion in its opinion:

> Harmon did not have an impairment prior to July 15, 1982, within the meaning of Ark. Stat. Ann. § 81-1313(i) (Supp. 1983) as that statute has been construed by the Arkansas Court of Appeals. *See Osage Oil Company* v. *Rogers*, 15 Ark. App. 319, 692 S.W.2d 786 (1985).

> Harmon is disabled as a result of the July 15, 1982 lumbosacral strain which aggravated his pre-existing back

condition. Since his pre-injury condition did not independently operate to affect his ability to work this case does not properly present an issue of apportionment. Rather, the preponderance of the evidence shows that Harmon is disabled from the aggravating effects of the July 15, 1982, lumbosacral strain upon his pre-existing and asymptomatic back condition of spondylolisthesis.

The issue raised on the appeal by Del Monte Frozen Foods is whether liability for benefits resulting from the disability rating over the 5% attributed to the 1982 Del Monte injury should be the sole and separate responsibility of the Second Injury Fund, hereinafter referred to as "SIF". In *Osage* this court held that "impairment" in Ark. Stat. Ann. § 81-1313(i) means loss of earning capacity due to a non-work related condition. *Id.* at 324, 692 S.W.2d at 789. The question before us is whether Harmon's pre-existing injuries constituted an "impairment" under Ark. Stat. Ann. § 81-1313(i) (Supp. 1985).

On appellate review the evidence and all inferences deducible therefrom must be viewed in the light most favorable to the finding of the Commission. We give the testimony its strongest probative force in favor of the finding of the Commission, whether it favored the claimant or the employer. *Id.* at 322, 692 S.W.2d at 788. We must affirm if the Commission's finding is supported by substantial evidence; even when a preponderance of the evidence might indicate a contrary result, we affirm if reasonable minds could reach the Commission's conclusion. *Id.* at 322, 692 S.W.2d at 788. Questions of credibility and the weight and sufficiency of the evidence are matters for determination by the Commission. The Commission is better equipped, by specialization and experience, to analyze and translate evidence into findings of fact than we are. *Id.* at 322, 692 S.W.2d at 788.

The evidence in the record illustrates that Harmon did not experience a decrease in his capacity to earn wages as a result of either the congenital condition of spondylolisthesis or the 1954 pelvis fracture. Therefore, we find that there was substantial evidence to support the Commission's findings that Harmon did not have an "impairment" within the meaning of Ark. Stat. Ann. § 81-1313(i) prior to July 15, 1982 and that, under *Osage*, the SIF is not liable for any of the benefits which are a consequence of the

July 15, 1982, injury. We affirm the Commission's findings on this point.

The question raised by Harmon's cross-appeal is whether Harmon proved by a preponderance of the evidence that he is permanently and totally disabled. Dr. Austin Grimes stated in his April 14, 1983, report that Harmon's lumbosacral strain should not have increased his permanent anatomical impairment by more than 5% over the pre-employment status. By letter dated September 6, 1983, to Crawford and Company, Dr. Grimes estimated Harmon's combined permanent partial physical impairment from all sources, including the compensable injury, to be 30% to the body as a whole. Dr. Grimes and Dr. Ted Honghiran concurred that Harmon could return to work but also agreed that he should curtail activities involving lifting, bending, and twisting his back. The evidence indicated that Harmon's vocational history is that of a manual laborer. He has a fourth grade education. His employment potential lies in work settings that will not require sustained physical exertion that may expose his back to new injury. Harmon testified that he planned to go back to work and stated that he felt he could work a 40-hour week.

Based on this evidence the Commission reversed the ruling of the ALJ holding Harmon permanently and totally disabled. The Commission awarded permanent disability benefits of 70% to the body as a whole. Giving the testimony its strongest probative force in favor of the findings of the Commission we find that there was substantial evidence presented to support the Commission's conclusion. Therefore, we affirm the Commission's finding on the point raised in the cross-appeal.

Affirmed.

MAYFIELD, J., concurs.

CLONINGER and GLAZE, JJ., dissent.

MELVIN MAYFIELD, Judge, concurring. I concur in the majority opinion in this case. The Commission has simply applied the law as declared by a panel of this court in *Osage Oil Co.* v. *Rogers*, 15 Ark. App. 319, 692 S.W.2d 786 (1985), and by the unanimous opinions of this court sitting en banc in the cases of *Second Injury Fund* v. *Girtman*, 16 Ark. App. 155, 698 S.W.2d 514 (1985), and *Second Injury Fund* v. *Fraser-Owen, Inc.*, 17

Ark. App. 58, 702 S.W.2d 828 (1986).

While one might differ in judging the preponderance of the evidence in the instant case, the law applied by the Commission has been settled and the Commission's factual finding is clearly supported by substantial evidence.

Moreover, the opinion of the Commission demonstrates that it thoroughly understands the law set out in the above cases and that it will not hesitate to hold the Second Injury Fund liable in a proper case.

TOM GLAZE, Judge, dissenting. The majority decision rings the "death knell" for the Second Injury Fund (SIF). The majority claims our holding in *Osage Oil Company* v. *Rogers*, 15 Ark. App. 319, 692 S.W.2d 786 (1985) dictates the result it reached here, but such an assertion is clearly erroneous. In *Osage*, we did—as the majority here points out—hold that before the SIF can become liable, the claimant must have suffered a pre-existing injury which resulted in a loss of earning capacity, not a mere anatomical loss. There, the claimant presented *no* evidence of loss in earning capacity that resulted from an earlier injury, so we determined the SIF was not involved. Here, I submit, the evidence is overwhelming that the claimant, Harmon, sustained substantially limiting injuries prior to his July 15, 1982, compensable injury.

In 1954, Harmon first was hurt in a truck accident and received a permanent partial disability in the amount of ten percent to the body as a whole. In 1963, he received an additional fifteen percent permanent partial rating resulting from a spinal fusion. When Harmon sustained his July 15, 1982, injury, which resulted in his receiving a rating of five percent to the body as a whole, he was fifty-two years old, had a fourth grade education, and had worked only on jobs which might be described as general labor (with the exception of a mechanics job he once held). Under the rationale of *Glass* v. *Edens*, 233 Ark. 786, 346 S.W.2d 685 (1961), I believe the evidence in the instant case clearly requires a finding that Harmon suffered a wage-loss in *some degree*, at least, from the pre-existing injuries he sustained in 1954 and 1963. To find otherwise, I believe, is clearly erroneous. If the SIF had not been involved, I feel the Commission surely would agree with my analysis of Harmon's prior condition.

The majority justifies its position on the basis that the record revealed that Harmon did not experience a decrease in his capacity to earn wages. Of course, it is established Workers' Compensation law that a claimant's earning of increased wages after an injury is not determinative of whether that claimant has suffered a loss in earning capacity. Here, Harmon obviously experienced a decrease in his capacity to earn wages. In fact, the administrative law judge determined that the combined effect of all Harmon's injuries caused Harmon to be totally and permanently disabled, and the Commission only disagreed with the *extent* of disability found by the law judge, finding Harmon's permanent disability to be seventy percent to the body as a whole. The Commission's final award reveals its true underlying view of the severe limitations Harmon sustained by his pre-existing injuries, since the evidence reflects he received no more than a five percent disability attributable to his present or July 15, 1982, injury. Given the evidence and the Commission's analysis of it in making its final award, I believe it is incredulous that SIF was not liable for a portion of Harmon's benefits. If the SIF is not liable on these facts, doubtless it ever will be liable.

CLONINGER, J., joins in this dissent.