WHITE CONSOLIDATED and Continental Loss Adjusting *v.* Alonzo ROONEY and Second Injury Fund

CA 92-1141                                                    866 S.W.2d 838

Court of Appeals of Arkansas
En Banc
Opinion delivered November 24, 1993
[Rehearing denied December 22, 1993.]

*Laser, Sharp, Mayes, Wilson, Bufford & Watts, P.A.*, by: *Brian Allen Brown*, for appellants.

*The Whetstone Law Firm*, by: *Robert H. Montgomery*, for appellees.

JOHN B. ROBBINS, Judge. This is an appeal by White Consolidated and its workers' compensation carrier, Continental Loss Adjusting (appellants), from a decision of the Workers' Compensation Commission which held that a prior work-related injury must involve a loss of wage earning capacity before Second Injury Fund (appellee) liability may be found.

The claimant, Alonzo Rooney, suffered a work-related back injury on September 30, 1980, while employed by Universal Nolin. As a result of this injury he underwent surgery on March 8, 1982, and there is evidence that this injury resulted in some degree of permanent physical impairment to the body as a whole.

There is also evidence that he did not, however, experience any reduction in wage earning capacity as a result of this injury.

On March 29, 1988, Rooney suffered a compensable lumbosacral strain while employed by White Consolidated. There is evidence that this injury resulted in a permanent physical impairment to the body as a whole; that this injury and the 1980 injury combined to produce a greater disability than would have resulted from the last injury alone, had the 1980 injury not occurred; and that Rooney is now permanently and totally disabled.

The Administrative Law Judge found that appellants' liability was limited to benefits for the 10% permanent physical impairment that he found had resulted from the March 29, 1988, compensable injury and that the Second Injury Fund was liable for benefits for a 55% permanent disability to the body as a whole. This 55% represents the sum of the 10% anatomical impairment that the law judge found had resulted from the 1988 injury and the 35% impairment attributable to the 1980 injury, subtracted from Rooney's total disability (100%) after his last injury.

The Second Injury Fund appealed to the full Commission, which affirmed the Administrative Law Judge in part, but reversed his finding that the Second Injury Fund had liability. The Commission held that the Fund had no liability because Rooney's 1980 injury was work-related and did not result in a loss of earning capacity.

On appeal to this court, the appellants do not contend that the Commission erred in finding that Rooney is permanently and totally disabled, but they contend that the Commission erred in finding that the Second Injury Fund has no liability for the payment of compensation benefits due him.

The Commission recognized that the Arkansas Supreme Court held in *Mid-State Construction Co.* v. *Second Injury Fund*, 295 Ark. 1, 746 S.W.2d 539 (1988), that "the liability of the Fund comes into question only after three hurdles have been overcome."

First, the employee must have suffered a compensable injury at his present place of employment. Second, prior

to that injury the employee must have had a permanent partial disability or impairment. Third, the disability or impairment must have combined with the recent compensable injury to produce the current disability status.

295 Ark. at 5, 746 S.W.2d at 541 (emphasis in the original).The Commission said it was stipulated that the first requirement was satisfied, but with regard to the second requirement, the Commission stated:

[D]efinitional constraints imposed by the Arkansas Workers' Compensation Law and by the Courts require a distinction between prior conditions that are work-related and prior conditions that are not work-related. *See Weaver* v. *Tyson Foods*, 31 Ark. App. 147, 790 S.W.2d 442 (1990). This distinction is based on the statutory definition of "disability" and on the Court's definition of "impairment," as those terms are used in Ark. Code Ann. § 11-9-525 (1987). . . .

. . . As those terms have been defined by statute and by the Courts, a prior anatomical impairment with no loss of wage earning capacity can only be an "impairment." However, the definition of "impairment" limits application of the term to prior non-work-related conditions. As a result, prior work-related conditions are precluded from ever being considered "impairments.". . .

. . . .

In the present claim, the claimant's prior condition was work-related, so it must be established that the 1980 injury and subsequent surgery resulted in a disability before the Fund may be found liable. Therefore, it must be established that the prior injury resulted in a loss of wage earning capacity.

The Commission then found that the "preponderance of the evidence fails to establish that the claimant sustained any loss of earning capacity as a result of the 1980 injury." Thus, the Commission found that the Fund had no liability to Rooney.

The thrust of appellants' argument to this court is that the statutory law as set out in Ark. Code Ann. § 11-9-525 (1987) uses the words "disability or impairment" in the "disjunctive"

and that the General Assembly intended "to protect all 'handicapped workers' and not just those with non-work-related handicaps." The appellants' brief in this court shows that this issue was argued to the full Commission upon the Second Injury Fund's appeal from the decision of the Administrative Law Judge. Appellants told the Commission, in their brief filed on February 4, 1992, that since the Arkansas Supreme Court's decision in *Mid-State Construction, supra,* neither that court nor this court had issued a published opinion on this issue. Appellants argued that the language in *Mid-State* indicated that to allow second-injury-fund liability to depend upon whether the worker's disability or impairment was work-related would impermissibly distinguish between two types of handicapped workers. Appellants' brief in this court also contains an objection to the jurisdiction of this court on the basis that the appeal should be heard by the Arkansas Supreme Court. Of course, that objection is overruled. *See Houston Contracting Co.* v. *Young,* 271 Ark. 455, 609 S.W.2d 895 (1980), and Rules of the Supreme Court and Court of Appeals 1-2(a)(3), 2-4(c).

*Mid-State Construction, supra,* set out the process by which this court, in ultimate reliance upon *Chicago Mill & Lbr. Co.* v. *Greer,* 270 Ark. 672, 606 S.W.2d 72 (1980), reached our decision in *Osage Oil Co.* v. *Rogers,* 15 Ark. App. 319, 692 S.W.2d 786 (1985), where we held that the word "impairment," which was added by Act 290 of 1981 to what was then Ark. Stat. Ann. § 81-1313(i) (Supp. 1979) (which had previously been amended by Section 4 of Act 253 of 1979), meant "loss of earning capacity due to a non-work-related condition" and that the impairment must be "independently" causing disability prior to the second injury and continue to do so after that injury. But in *Mid-State* our supreme court said we were wrong in holding "that the impairment must have involved loss of earning capacity." The court said that "a claimant's non-work-related condition suffered prior to the recent compensable injury need not have involved a loss of earning capacity." 295 Ark. at 6, 746 S.W.2d at 542. However, *Mid-State* also quoted the "operative language" from its *Greer, supra,* decision and said:

> In other words, the claimant's prior impairment must have been of a physical quality sufficient in and of itself to support an award of compensation had the elements of

compensability existed as to the cause for the impairment. It is the substantial nature of the impairment which is emphasized, and the elements of compensability, none of which may have existed as to the particular claimant, merely assist the fact finder in his determination as to whether the former condition was sufficient in degree to constitute an impairment qualifying the claimant as one of the "handicapped" for whose benefit the statute was enacted. . . .

*Id.*

While the opinion in *Mid-State* did not specifically state that *Osage* was wrong in holding that "impairment" is a condition that is not work-related, one thing is clear. The court said that our definition of impairment in *Osage* requires a result that:

[I]mpermissibly distinguishes between two types of handicapped persons, contravenes the statutory scheme which makes employers liable only for the "degree or percentage of disability or impairment which would have resulted from the [recent compensable] injury had there been no preexisting disability or impairment," and defeats the purpose of the Fund to encourage the hiring of the handicapped.

295 Ark. at 8, 746 S.W.2d at 543 (brackets in the original).

Thus it is clear that there is a point at which it is impermissible to distinguish between types of handicapped persons. Therefore, it appears that we must retreat from that portion of our definition of "impairment" that said it is a non-work-related condition. Not only is this strongly implied by the *Mid-State* opinion, but there seems to be no real justification for limiting "impairment" to a non-work-related condition. Moreover, neither party has cited us to a decision where this precise issue has been presented to us. In fact, a division of this court has said that the legislature added the words, "or impairment" to the act to make it clear that "non-work-related" conditions were included. *See Masonite Corporation* v. *Mitchell*, 16 Ark. App. 209, 212, 699 S.W.2d 409, 411 (1985). By implication, at least, this suggests that "work-related" conditions were already included in the term "disability."

■■ This means, that we must remand this case for two reasons. One, the Commission did not find that the claimant, Mr. Rooney, sustained a 35% anatomical impairment as a result of his first (1980) injury. The law judge made such a finding, but the Commission must make the finding that we review. *Ark. Coal Co. v. Steele*, 237 Ark. 727, 375 S.W.2d 673 (1964); *Jane Traylor, Inc. v. Cooksey*, 31 Ark. App. 245, 792 S.W.2d 351 (1990). Two, the Commission must make a determination with regard to the second and third "hurdles" that *Mid-State* said must be "overcome" before the Fund has any liability. We therefore point out that our decision today only removes from our former definition of "impairment" the requirement that it must be a non-work-related condition. The Arkansas Supreme Court in *Mid-State* removed from our definition of impairment the requirement that there must be "loss of earning capacity." The consequence of that holding is spelled out in *Mid-State*, but we point out that *Mid-State* was remanded for the Commission to determine:

> (1) whether Davis' former neck injury and loss of the right eye constituted an "impairment" in that they were of a physical quality which, were the other elements of compensability present, would have been capable of supporting an award; and (2) whether, even if the first requirement is satisfied, Davis' former condition combined with his 1981 compensable injury to produce a disability greater than that which "would have resulted from the last injury, considered alone and of itself." Section 11-9-525(b)(3).

295 Ark. at 9, 746 S.W.2d at 543.

We affirm the Commission's finding that Rooney is permanently and totally disabled. We reverse its finding as to the liability of the Second Injury Fund and remand that issue for a new determination in keeping with this opinion and the opinion in *Mid-State*.

JENNINGS, C.J., concurs.

JOHN E. JENNINGS, Chief Judge. I concur in the decision of the court for the reasons expressed in the opinion of the administrative law judge, the pertinent part of which follows:

Turning to the Second Injury Fund liability question, I note that as it normally does, the Fund seeks to defend by claiming that if claimant cannot demonstrate that his first injury (i.e., 1980 injury) left him with some degree of permanent partial disability (and it is clear that he sustained no such disability) the Fund has no liability, its position being that the term "impairment" in Ark. Code Ann. §11-9-525 (1987), the Second Injury Fund statute, means a *non-work-related* condition. Therefore, the argument runs, a claimant having a substantial permanent physical impairment flowing from a previous *work-related* injury is ineligible for an award from the Fund based on the combination of this impairment and a subsequent compensable impairment. The argument is that, unless the first impairment is non-work related, a claimant must prove disability — i.e., diminished wage earning capacity (Ark. Code Ann. §11-9-102(5) (1987)) — flowing from the previous injury. . . .

The Fund's position is that §11-9-525, as interpreted by the Arkansas Supreme Court in *Mid-State Construction Co.* v. *Second Injury Fund*, 295 Ark. 1, 746 S.W.2d 539 (1988), restricts Fund liability to two types of cases: First, cases in which claimant can show that the effects of the last injury have combined with those of a former work-related injury that itself produced wage loss disability; or, second, cases in which claimant can show that the sequelae of his last injury combined with the effects of a previous non-work-related permanent physical impairment.

In the case at bar, claimant did not sustain a permanent wage-loss disability after his first injury, only a substantial permanent physical impairment. If the Fund's argument that "impairment" means only a *"non-work related impairment"* is well taken, then claimant cannot get to the Second Injury Trust Fund. . . .

I am well aware that the Court of Appeals has unambiguously taken the position in *dicta* that impairment means a non-work related condition, but I note at the outset that it does not appear to have squarely ruled on the issue, for example by relieving the Fund of liability solely on the

ground that a claimant's pre-existing impairment was attributable to a job related condition, although the court came close to doing this in *State of Arkansas Second Injury Fund* v. *Girtman*, 16 Ark. App. 155, 698 S.W.2d 514 (1985). See, also, *Second Injury Fund* v. *Coleman*, 16 Ark. App. 188, 699 S.W.2d 401 (1985); *Del Monte Frozen Foods, Inc.* v. *Harmon*, 19 Ark. App. 51, 716 S.W.2d 784 (1986). So recondite has the law become that the Court of Appeals itself appears to become confused at times. For instance, in *Masonite Corp.* v. *Mitchell*, 16 Ark. App. 209, 699 S.W.2d 409 (1985), the court implied that impairment means both compensable and non-work related conditions:

> [Appellant] asserts that by adding 'or impairment' after the word 'disability' in §4 of Act 290 of 1981 the legislature intended to make the fund liable whether or not the prior impairment was causing loss of earning capacity prior to the injury. That argument was rejected in *Osage Oil Company* v. *Rogers, supra*, where we held that the inclusion of the word 'impairment' was intended only to make it clear that the first impairment *did not have to be* one which would be compensable under the act but rather, the definition *included* non-work-related ones.

*Id.* at 212, 699 S.W.2d at [411] (emphasis added).

The Fund's argument on the definition of "impairment" runs as follows. In 1980, the Arkansas Supreme Court decided *Chicago Mill & Lumber Co.* v. *Greer*, 270 Ark. 672, 606 S.W.2d 72 (1980), construing Ark. Stat. Ann. §81-1313(f)(2)(iii) (Repl. 1976). In rejecting the Fund's contention that previous injuries and disabilities had to be *work related*, the Court in *Greer* quoted with approval the following language from Professor Larson's treatise: "[A] prior impairment, although not actually a compensable disability, must have been of a physical quality capable of supporting an award if the other elements of compensability were present." *Id.* at 677, 606 S.W.2d at [74]. For some reason the Fund appears to have read this language not as a recognition, which it obviously was, that impairment should be expansively defined to include not only

compensable conditions but also non-compensable ones capable of supporting an award if "elements of compensability were present," but instead as supportive of a restrictive definition encompassing only non-work related conditions. In response to *Greer*, the Fund argument continues, Act 290 of 1981 was enacted, amending the statute by adding the phrase "or impairment" or other language using the term "impairment" at several places in the statute. By these additions, the Fund maintains, the General Assembly intended to make clear that Fund liability could be grounded on a previous non-work related condition (impairment) or a previous compensable disability.

A number of difficulties inhere in the Fund's argument about the meaning of impairment. First, the language of the Act forecloses the reading advocated by the Fund. The Second Injury Fund statute, as amended by Act 290 of 1981 and recodified in language identical in all material respects to the Act 290 language, reads in pertinent part as follows:

> (a)(1) The Second Injury Trust Fund established in this chapter is a special fund designed to insure that an employer employing a handicapped worker will not, in the event the worker suffers an injury on the job, be held liable for a greater disability or *impairment than actually occurred while the worker was in his employment.*
>
> . . .
>
> [b] (3) If an employee who has a permanent partial disability or impairment, whether from compensable injury or otherwise, receives a *subsequent compensable injury resulting in additional permanent partial disability or impairment* so that the degree or percentage of disability *or impairment* caused by the combined disabilities or *impairments* is greater than that which would have *resulted from the last injury*, considered alone and of itself, and if the employee is entitled to receive compensation on the basis of combined disabilities or impairments, then

the employer at the time of the last injury shall be liable only for the degree or percentage of disability or *impairment which would have resulted from the last injury* had there been no pre-existing disability or impairment.

(4) After the compensation liability of the employer for the last injury, considered alone, which shall be no greater than *the actual anatomical impairment resulting from the last injury*, has been determined by an administrative law judge or the commission, [the combined disability shall be determined.]

(5) *If the previous disability or impairment, whether from compensable injury or otherwise*, and the last injury together result in permanent total disability, the employer at the time of the last injury shall be liable only for the *actual anatomical impairment resulting from the last injury considered alone and of itself.*

Subsections 11-9-525(a)(1), (b)(3)—(5) (1987).

In the space of four paragraphs the word impairment is used in seven different contexts in a fashion utterly incompatible with its having a meaning restricted to non-work-related injury. How can impairment mean a non-work related condition in a statute that speaks of a "compensable injury resulting in additional permanent partial disability *or impairment*" ((b)(3)) and furthermore says, "[T]he employer at the time of the last injury shall be liable only for the actual anatomical *impairment resulting from the last injury* . . ." ((b)(5))?

The rationale for restricting the meaning of impairment is fallacious. The Fund appears to argue that the term impairment must mean something other than a compensable condition because if it did not, if it meant the impairment arising from a compensable injury, the mathematical computations required by what is now §11-9-525(b)(4) would be impossible, as one would be forced to choose between different percentage amounts in adding past disability ratings to present ones. . . .

The Fund argues that the statute cannot sensibly be read unless impairment means "loss of earning capacity due to a non-work related condition." But *the statute says* that an impairment may flow from a "compensable injury" ((b)(3)). The Fund argues that the statute can be interpreted only by ignoring its plain language.

Even if this argument were correct, it would not resolve the dilemma mentioned in the Fund's argument above, because many Fund cases involve multiple previous injuries — claimants frequently have previous non-work-related impairments as well as work-related conditions —with the result that claimants arrive at the Commission with combinations of work-related disabilities and work-related and non-work-related impairments. (*Mid-State* itself was such a case.) Accepting the Fund's contentions about computation problems for purposes of argument, what happens when, prior to the last injury, the claimant has a 10% impairment from a non-work related condition and a 15% disability from a previous compensable injury? In such a case the "disability" and the "impairment" do not "constitute the same mathematical quantity or extent of injury. . ." (brief at 13), and computation becomes impossible, according to the Fund. This is obviously incorrect. The problem is illusory. In such cases, one would simply add the percentage of disability to the percentage of impairment. There is no other way to proceed. There is certainly no implied or explicit rule against adding or subtracting disabilities and impairments. . . Once one accepts that there are cases where disabilities and impairments must be added or subtracted if the statute is not to be rendered a nullity, it becomes clear that distinguishing between work-related and non-work-related impairments was unnecessary in the first place.

Third, it has never been convincingly explained why, if the legislature wanted to inject into the statute a reference to non-work-related conditions, it did not say this in so many words rather than select from all the terms available the one (impairment) universally used by practitioners, the Commission, and the courts alike to refer to a compensable, functional compromise of bodily capacity. The

Fund's argument requires that the word "impairment" mean one thing in a part of the act not pertaining to Fund liability — for instance, §11-9-522(b) — but something entirely different in §11-9-525. According to the Fund's argument, the term "anatomical impairment" in §11-9-525 means something different from "impairment" in the same section, but means the same thing as "impairment" in §11-9-522(b). To accept this argument one must of necessity impute to the Legislature an intent to maximize confusion. With this I cannot agree. In this connection, it should be borne in mind that the General Assembly did not stop using the word "impairment" in 1981. Act 10 of 1986 (Second Extraordinary Session) amended the Workers' Compensation Law by adding the following language to what is now Ark. Code Ann. §11-9-522(b) (1987):

> In considering claims for permanent partial disability benefits in excess of the employee's percentage of *permanent physical impairment*, the commission may take into account, in addition to the percentage of *permanent physical impairment*, such factors as the employee's age, education, work experience, and other matters reasonably expected to affect his future earning capacity. However, so long as an employee, subsequent to his injury, has returned to work, has obtained other employment, or has a bona fide and reasonably obtainable offer to be employed at wages equal to or greater than his average weekly wage at the time of the accident, he shall not be entitled to permanent partial disability benefits in excess of the percentage of *permanent physical impairment* established by a preponderance of the medical testimony and evidence.

(Emphasis added.)

The Legislature did not use the term "anatomical impairment," as it would have if argument of the Fund presented above were correct. The Legislature used "impairment." If "impairment" means a "non-work related condition," the Legislature is here recognizing employer liability flowing from injuries that are *ex hypothesi* non-compens-

able. The burden should be on the Fund to explain why this should be so. Of course, the reality is that by using the word impairment the Legislature was using the term most commonly employed in legal parlance to refer to residual incapacities of compensable injuries.

Perhaps the best argument against the Fund's contrived interpretation of impairment is the irrationality of the result it entails, which is to release the Fund from liability in a case (such as this one) where a claimant sustains a 35% back impairment at work for employer A and subsequently becomes totally disabled while working for employer B after another compensable injury to the same area of the back. Imposing liability on the Fund in these circumstances permits the employee to get the job with employer B, a job that otherwise may well be refused if *Osage* dicta continues to be followed. For why should employer B hire a previously injured employee, if all liability for a subsequent injury will fall on B's carrier? Not only is the distinction drawn by the Fund logically insupportable, it works a discernible harm on injured employees, who are less likely, by definition, to be able to compensate for employment discrimination (based on "previously-injured" status) by making themselves more attractive to employers through working longer and harder. The question is not just which of three types of respondents — carriers, self-insured respondents, or the Fund — should pay. The ability of an injured worker to return to gainful employment is also at issue.

The Fund relies on *Mid-State Construction Co. v. Second Injury Fund*, 295 Ark. 1, 746 S.W.2d 539 (1988) to support its restrictive reading of the term impairment. There is language in *Mid-State*, the primary source of authority from the Arkansas Supreme Court, that, if not considered in the context of the case's history, might be read as approval of the definition advocated by the Fund. Properly placed in context, however, the *Mid-State* language relied upon by the Fund finds the Arkansas Supreme Court merely adopting the Court of Appeals' position on an aspect of the definition of impairment not at issue in *Mid-State*.

It must be remembered that the primary issue faced by the Supreme Court in *Mid-State* was whether the term impairment connoted, as the Court of Appeals had previously held, wage loss disability. In focusing on the question of whether impairment necessarily meant loss of wage earning capacity, as the Arkansas Court of Appeals had previously held in a number of cases, the Supreme Court in *Mid-State* appears to have assumed that the Court of Appeals had correctly restricted impairment to non-work-related conditions. The.result was that the Supreme Court merely adopted an impairment standard probably suggested by the Fund and seemingly required by previous Court of Appeals cases such as *Osage Oil Co.* v. *Rogers*, 15 Ark. App. 319, 692 S.W.2d 786 (1985) *because whether "impairment" meant only non-work-related conditions was not a question presented by the appeal in Mid-State* A better reason for statutory interpretation rules counseling wariness about reliance on *dicta* can scarcely be imagined.

A salient point about the *Mid-State* decision avoided by the Fund in its arguments is that in that case the claimant's previous 10% permanent impairment *resulted from a compensable neck injury. . .*

Stating what remained to be decided after its decision, the Court in *Mid-State* had the following to say:

> We have discarded the definitional prerequisite that an impairment involve a loss of earning capacity. As such, it remains to determine: (1) whether *Davis' former neck injury* and loss of the right eye constituted an 'impairment' in that they were of a physical quality which, were the other elements of compensability present, would have been capable of supporting an award;...

*Mid-State* at 8, 746 S.W.2d at [543] (emphasis added.) Why would the Supreme Court decide on the one hand that impairment meant only non-work related conditions and in the next breath instruct the lower court to decide whether claimant's previous compensable work-related neck injury left him with an impairment? Did the Supreme Court in

*Mid-State* intend to agree with Court of Appeals' cases saying *Greer* held that the term impairment should be restrictively read to encompass only non-work related injuries? The answer to this question appears in *Mid-State* when the Court stated, "In considering the question of Second Injury Fund liability, we first note that the claimant's former condition *need not* have met all elements of compensability under workers' compensation law. [Citing *Greer*.]" *Mid-State* at 5, 746 S.W.2d at [541]. Later in the same opinion, the Court had the following to say:

> To hold, as did the court of appeals, that there must in fact be evidence that the impairment involved a loss of earning capacity, mandates a prerequisite which (with the narrow exception that the impairment *can* be non-work-related) directly conflicts with the language from Larson and our decision in *Greer* that the impairment need *not* have been a 'compensable disability.'

*Mid-State* at 7, 746 S.W.2d at [542] (emphasis added.)

To say that a claimant's former condition need not have met requirements of compensability does not, under any regime of logic, mean that it must be shown that, in fact, the former condition did not meet compensability standards. Properly read, the Court's opinion in *Mid-State* contains nothing that immunizes the Fund from claims asserted by claimants with serious pre-existing impairments stemming from compensable injuries.

The Arkansas Supreme Court has never adopted the Fund's reasoning on the impairment question and in fact, as pointed out above, has by implication declined to follow it.